UNITED STATES of America, Appellee,

v.

Jose GRACIA, Jr., Alberto Perez, and Ramon Saul Sanchez, Defendants-Appellants.

Nos. 272, 373 and 383, Dockets 84–1216, 84–1232 and 84–1223.

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1984.

Decided Feb. 14, 1985.

Marc J. Gottridge, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Robert B. Bucknam, John K. Carroll, David M. Zornow, Asst. U.S. Attys., New York City, of counsel), for appellee.

Richard Ware Levitt, New York City (Rudin & Levitt, New York City, of counsel), for defendants-appellants Gracia and Sanchez.

J. Jeffrey Weisenfeld, New York City (Paul A. Goldberger, Goldberger & Dubin, P.C., New York City, of counsel), for defendant-appellant Perez.

Before VAN GRAAFEILAND, PIERCE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

These appeals are from judgments in three cases heard in the United States District Court for the Southern District of New York, in which defendants Jose Julio Gracia, Jr., Alberto Perez, and Ramon Saul Sanchez were separately convicted and sentenced for criminal contempt for refusing to testify, under grants of use immunity, before a grand jury investigating crimes allegedly committed by the terrorist group "Omega 7". Gracia was found guilty in a bench trial before Charles L. Brieant, *Judge*, and was given a split sentence of five years' imprisonment, to serve four months followed by four years' probation. Perez was found guilty in a jury trial before Robert W. Sweet, *Judge*, and was sentenced to four years' imprisonment. Sanchez was found guilty in a jury trial before David N. Edelstein, *Judge*, and was sentenced to nine years' imprisonment. We affirm the convictions of all three defendants as well as the sentences of Gracia and Perez, but we modify Sanchez's sentence by reducing it from nine years to four years.

I. BACKGROUND

The criminal contempt charges against Gracia, Perez, and Sanchez arose out of their refusals to testify before the 1982 Additional Grand Jury Number Two for the Southern District of New York, which was investigating crimes allegedly committed by anti-Castro Cuban exiles in the terrorist group, Omega 7. According to the government's brief, Omega 7 has been responsible for at least thirty bombings, two murders, injuries to New York City police officers, threats to kill and maim, and "untold" property damage. The federal crimes under investigation by Grand Jury Number Two included the attempted murder of Cuba's ambassador to the United Nations, assaults on foreign officials, interstate transportation of explosives, destruction of foreign government property located in the United States, and conspiracy.

Gracia was subpoenaed and appeared before the grand jury on October 14, 1982. He was asked the following questions but refused to answer any of them, claiming his fifth amendment privilege against self-incrimination:

Q: Were you recruited to participate in Omega 7 activities by Pedro Ramon?

Q: Did you participate in the surveillance of Raul Roa, the Cuban Ambassador to the United Nations prior to the attempt on his life in 1980?

Q: Do you know who built the bomb that was placed under Ambassador Roa's car on March 5, 1980?

Q: To your knowledge, who attached the bomb to the underside of Ambassador Roa's car?

At this point Gracia announced that he intended to refuse to answer every question the prosecutor might ask him. The prosecutor then read to Gracia an order signed by Judge Charles E. Stewart, Jr., which granted Gracia use immunity under 18 U.S.C. §§ 6002 and 6003, but Gracia still refused to answer. Judge Stewart then found Gracia in civil contempt and ordered him confined for the lesser of eighteen months or the life of the grand jury. 28 U.S.C. § 1826(a).

Sanchez appeared before the grand jury on October 19, 1982, and was asked substantially the same questions that had been put to Gracia. The results were similar: Sanchez refused to answer any question, he was given use immunity, he still refused to testify, and he was then found in civil contempt, in this instance by Judge Edelstein. The scenario was played a third time in early November 1982 with Perez, who was found in civil contempt by Judge Irving Ben Cooper. For their civil contempts Sanchez and Perez, like Gracia, were ordered confined for the lesser of eighteen months or the life of the grand jury.

Imprisonment for civil contempt failed to soften Gracia's determination not to answer questions, and, after seventeen months of incarceration, he was indicted for criminal contempt under 18 U.S.C. § 401 for disobeying the court's order to testify. At his one-day bench trial Gracia stipulated to the facts constituting the criminal contempt, and also acknowledged that he had disobeyed the court order "for reasons which, after consulting with counsel, he realizes do not constitute a legal defense to this case but which, he understands, may be brought to the court's attention in mitigation of sentence, should he be found guilty."

Gracia was found guilty, and at sentencing his attorney urged the court to take into account the facts that Gracia's decision not to testify was a matter of conscience, that Gracia was not motivated by greed or selfish interests, that Gracia disputed any government claim that he was or had been a member of Omega 7, and that Gracia sincerely believed that his refusal to testify was in the best interests of the United States and Cuba. On June 11, 1984, Judge Brieant sentenced Gracia to five years' imprisonment, suspending all but four months and providing for four years' probation. A special condition of probation permitted the probation officer to designate suspected terrorists with whom Gracia could not associate.

Sanchez also remained adamant in refusing to testify even after some seventeen months of imprisonment for civil contempt, and he, too, was indicted for criminal contempt. At his jury trial before Judge Edelstein, Sanchez stipulated to all the facts establishing the elements of the crime, and his retained counsel chose to make neither an opening statement nor a summation. At the conclusion of the two-day trial Sanchez was found guilty. On June 14, three days after Gracia's sentencing, Judge Edelstein sentenced Sanchez to nine years' imprisonment.

Perez, equally obdurate, served eighteen months for civil contempt before his indictment for criminal contempt. At his jury trial before Judge Sweet, Perez stipulated to the essential facts of the crime but testified himself, explaining that he had disobeyed Judge Edelstein's order because he feared that Castro's agents would retaliate against members of his family, especially those still living in Cuba. Perez was found guilty after a two-day trial and, on June 21, 1984, was sentenced by Judge Sweet to four years' imprisonment.

## II. DISCUSSION

Although defendants raise issues unique to their separate cases, all three contend that the criminal contempt statute, 18 U.S.C. § 401, is unconstitutional because it

fails to prescribe a maximum sentence. We address this issue first and then take up the individual claims.

### A. Constitutionality of the Criminal Contempt Statute.

Section 401 of 18 U.S.C. provides in relevant part:

A court of the United States shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Appellants argue that this statute violates both the separation of powers doctrine and their due process rights. We conclude that the statute violates neither of these constitutional constraints.

The premise of the separation of powers argument is that the authority to set criminal penalties belongs solely to the legislature; the inference is that the criminal contempt statute is unconstitutional because it delegates unlimited authority to the courts to set penalties for the crime of contempt. While it is true generally that "[i]n our system, so far at least as concerns the federal powers, defining crimes and fixing penalties are legislative, not judicial, functions." *United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948) (footnote omitted), it has long been recognized that contempt sentences are treated differently because of the unique role they play in upholding the authority and dignity of the courts and, ultimately, in preserving the courts' independence and constitutional status.

■ Early in the nineteenth century the Supreme Court held that federal courts were powerless to exercise a common law criminal jurisdiction, but it made a specific exception for contempt:

Certain implied powers must necessarily result to our courts of justice, from the nature of their institution. But jurisdiction of crimes against the state is not among those powers. *To fine for contempt, imprison for contumacy, enforce the observance of order, &c., are powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others: and so far our courts, no doubt, possess powers not immediately derived from statute;* but all exercise of criminal jurisdiction in common-law cases, we are of opinion, is not within their implied powers.

*United States v. Hudson*, 11 U.S. (9 Cranch) 32, 34, 3 L.Ed. 259 (1812) (emphasis added). Indeed, courts have a "constitutional obligation" to protect themselves from conduct that impairs their ability to carry out Article III functions, *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984), and this obligation implies the power to set appropriate sentences for contempt. The setting of sanctions to uphold the authority of the courts, therefore, is not a legislative prerogative, but an inherent power of the judiciary. Consequently, congress's failure to set by statute a maximum penalty for contempt does nothing to offend the separation of powers doctrine. *See United States v. Martinez*, 686 F.2d 334, 341 (5th Cir.1982).

■ Appellants are also mistaken in thinking that current law fails to provide adequate due process protections simply because contempt penalties are limited only by judicial discretion. To guard against abuse in contempt sentences, both district and circuit courts must exercise special responsibilities. *Green v. United States*, 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958), *partially overruled on other grounds, Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

[I]n the areas where Congress has not seen fit to impose limitations on the sentencing power for contempts the district courts have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection. The "discretion" to punish vested in the District Courts by § 401 is not an unbridled discretion. Appellate courts have a special responsibility for

determining that the power is not abused, to be exercised if necessary by revising themselves the sentences imposed. * * * The answer to those who see in the contempt power a potential instrument of oppression lies in assurance of its careful use and supervision, not in imposition of artificial limitations on the power.

*Green v. United States,* 356 U.S. at 188, 78 S.Ct. at 645.

Heeding this admonition, the circuit courts have both remanded contempt cases for resentencing, *e.g., United States v. Restor,* 679 F.2d 338 (3d Cir.1982); *United States v. Christie Industries, Inc.,* 465 F.2d 1002 (3d Cir.1972), and themselves reduced contempt sentences, *e.g., United States v. Green,* 630 F.2d 566 (8th Cir.) (two-year sentences on each of five counts reduced to five months on each count), *cert. denied,* 449 U.S. 904, 101 S.Ct. 277, 66 L.Ed.2d 135 (1980); *United States v. Gomez,* 553 F.2d 958 (5th Cir.1977) (fifteen-year sentence reduced to two years); *United States v. Leyva,* 513 F.2d 774 (5th Cir. 1975) (thirty-five-year sentence reduced to two years); *United States v. Levine,* 288 F.2d 272 (2d Cir.1961) (one-year sentence reduced to six months). Given the holding and guidance of *Green,* implemented by the actual appellate practice of revising unfair contempt sentences, we find no due process flaw in congress's failure to include a maximum penalty in the criminal contempt statute.

#### B. *Sanchez's Individual Claims.*

Sanchez offers seven additional grounds for dismissing the indictment, for reversing the conviction, and for modifying his sentence. The indictment should be dismissed on double jeopardy grounds, he claims, because his civil contempt imprisonment was "presumptively" for punitive purposes. His arguments for reversing the conviction are that Judge Edelstein should have disqualified himself; that the voir dire of the jury was inadequate; that a motion to adjourn the trial was improvidently denied; and that during trial there were improper redactions of documents, erroneous preclusion of relevant evidence, and "unreasonable threats" by the judge against the defendant and defense counsel. The arguments for reducing the sentence are that Judge Edelstein relied on improper criteria and that the sentence was excessive.

We have carefully examined the record in light of each of these claims and are satisfied that all but one are without merit. The meritorious claim is that the sentence is excessive, and after careful evaluation we have decided that this is an appropriate case under *Green v. United States,* 356 U.S. at 188, 78 S.Ct. at 645, to exercise our special responsibility to revise excessive contempt sentences. We therefore affirm Sanchez's conviction, but reduce his sentence from nine to four years.

■ In reaching this decision we have been guided by the principle of proportionality, which is "deeply rooted ... in common-law jurisprudence." *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). Although *Solem's* specific concern is with standards of proportionality required by the eighth amendment, Justice Powell's majority opinion sets out factors which are of importance whenever proportionality in sentencing is at issue, even if, as is the case here, the defendant makes no eighth amendment claim. Among these factors, or immediately implied by them, are comparisons with sentences for similar offenses, comparisons with sentences imposed on similarly situated defendants convicted of the same offense, and comparisons with sentences for the same offense in different jurisdictions. *See id.* 103 S.Ct. at 3010–11. These are not the only factors to be considered in analyzing proportionality, and no single factor will be dispositive by itself. *Id.* But in the present case we are persuaded that these three factors, taken together, show that Sanchez's nine-year sentence fails to meet the standard set by the general principle of proportionality as it applies in contempt cases, quite aside from any eighth amendment consideration.

First, if Sanchez had given false testimony instead of merely remaining silent, a conviction on one count of perjury or one count of making a false material declaration would have subjected him to a maximum period of incarceration of only five years. *See* 18 U.S.C. §§ 1621, 1623; *United States v. Gomez*, 553 F.2d at 959 (reducing contempt sentence partly because of need to preserve proportionality with maximum perjury sentence); *United States v. Leyva*, 513 F.2d at 780 (same). We see nothing in Sanchez's conduct before the grand jury that is worse than perjury, and are therefore unconvinced that a "just deserts" rationale for punishing this defendant justifies a penalty that is substantially harsher than what he could have received for a perjury conviction. We also see no reason based on general deterrence to punish this defendant's silence more than perjury; indeed, since a perjurer may consciously mislead a court or grand jury, it would be anomalous to encourage those who would otherwise remain silent to choose, instead, to lie.

The second factor we find crucial in this case is the length of the sentences given Perez and Gracia. Perez, Gracia, and Sanchez were all convicted of criminal contempt at about the same time for refusing to answer the same, or almost the same, questions in relation to the same grand jury investigation. Other things being equal, grossly disparate sentences should not be given for these nearly identical offenses. We find nothing in Sanchez's situation to justify his imprisonment for twice as long as Perez, and twenty-seven times as long as Gracia.

A third factor is that, to our knowledge and to the knowledge of the parties in the present cases, no court of appeals has ever affirmed a criminal contempt sentence in excess of five years. Nothing in Sanchez's offense or background merits punishment nearly double that given for any other criminal contempt conviction which has been affirmed on appeal.

Reducing Sanchez's sentence to four years shows neither lack of respect by this court for the grand jury, nor lack of enthusiasm for vigorous investigation and prosecution of terrorist activities. Lowering this sentence does show our concern that contempt sentences, over which the courts have special powers and responsibilities, bear a just and fair relationship to the sentences imposed for similar crimes on similarly situated defendants.

This does not mean, of course, that we must reduce Sanchez's sentence to four months' imprisonment so that it will be identical to the sentence Judge Brieant gave Gracia. The general principle of proportionality applicable in contempt cases calls for the elimination of certain kinds of gross disparity among sentences imposed on comparably situated defendants, but it does not require that all such sentences be automatically reduced to the level of least severity. Sentencing Sanchez to four years puts him in the same position as Perez, and it eliminates the gross disparities between, on one hand, his contempt sentence and, on the other, the maximum perjury sentence authorized and other contempt sentences actually imposed.

The remaining disparity between Sanchez's four-year sentence and Gracia's four-month imprisonment under a five-year split sentence is, in the circumstances of this case, permissible. Given our deep concern for the consequences of this kind of contempt, the importance of deterring such behavior, and the extent of the defendant's defiance of the court order, all of which are important factors in setting contempt sentences, *see United States v. United Mine Workers of America*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), we consider a four-year prison sentence to be appropriate in the present case.

We stress, however, that in saying these things about a four-year sentence we are not implying that suspension of all but four months of Gracia's five-year sentence was inappropriate. Although we will not hesitate to reduce a contempt sentence we find to be improperly harsh, the district courts still have great latitude in setting

contempt sentences that we will not disturb.

## C. *Gracia's Individual Claim.*

Gracia was sentenced by Judge Brieant to five years in prison with all but four months of that time suspended, and with a four-year probationary period. Gracia's individual complaint is with the special condition of probation imposed by Judge Brieant which requires that Gracia "is not to consort with any persons designated by name by his probation officer as being affiliated with or suspected of being affiliated with either terrorist activities or with those persons who are engaged in terrorist activities in the United States." Gracia argues that this condition bears no reasonable relationship to the treatment of the defendant or the protection of the public; that it violates his first amendment rights; that it is unduly harsh; and that it improperly delegates authority to the probation officer to make judgments about terrorist activity and suspected terrorists.

A district court's imposition of conditions on probation is reviewable only for abuse of discretion, *Fiore v. United States*, 696 F.2d 205, 207 (2d Cir.1982), and exercise of that discretion is proper as long as the probation conditions bear "a reasonable relationship to the treatment of the accused and the protection of the public." *United States v. Pastore*, 537 F.2d 675, 681 (2d Cir.1976). "The power to impose conditions is a broad one", and it "permits insulating the individual from the conditions that led him into trouble." *United States v. Moore*, 486 F.2d 1139, 1174 (D.C.Cir.) (en banc) (Leventhal, *J.*, concurring), *cert. denied*, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973). Applying these standards, we find that there is no reason at this time to change or reject the special condition set by Judge Brieant.

It is not unreasonable to think that keeping Gracia separate from known or suspected terrorists and from people affiliated with known or suspected terrorists would advance the sentencing goals both of rehabilitation and of protecting the public.

Isolating Gracia from these people does restrict his freedom of association, but "a probationer's freedom of association may be restricted in pursuit of legitimate probation objectives". *United States v. Albanese*, 554 F.2d 543, 547 (2d Cir.1977). Here the objectives are legitimate, and the condition is not unduly harsh.

The question of improper delegation of authority to the probation officer also creates no problem. In this case there is nothing wrong with giving the probation officer the initial power to specify those people with whom Gracia should not have contact, since any claim of abuse of this delegated authority can be reviewed by Judge Brieant under 18 U.S.C. § 3651, which empowers the court to revoke or modify any condition of probation at any time during the probationary period. *United States v. Manfredonia*, 341 F.Supp. 790, 791 n. 1 (S.D.N.Y.), *aff'd*, 459 F.2d 1392, *cert. denied*, 409 U.S. 851, 93 S.Ct. 61, 34 L.Ed.2d 93 (1972). In a post-argument letter dated January 14, 1985, Gracia's attorney informed us that the probation officer had, in fact, given Gracia a list of forbidden contacts, and that Gracia objects to the constraints it imposes on his freedom of association. Any claim that one or more of the named people on this list does not fall within the restriction of the special condition should first be brought before Judge Brieant, who may then determine whether the probation officer has abused his authority. It would not be appropriate for us to rule on the reasonableness of this list in the first instance.

We therefore affirm Gracia's conviction and sentence, including the special condition imposed on his probation.

## D. *Perez's Individual Claims.*

Perez raises three additional issues. He argues that the district court improperly admitted prejudicial evidence at trial; that his sentence was improper because it was imposed for coercive rather than for punitive purposes; and that his sentence was excessive. We are unpersuaded by any of

his arguments and affirm his conviction and sentence.

■ The evidence in question concerned a criminal complaint against Perez that was pending at the time he refused to testify before the grand jury. In his brief on the present appeal Perez has acknowledged that the evidence was relevant, and his argument is only that its prejudicial effect substantially outweighed its probative value. Fed.R.Evid. 403. At trial Judge Sweet performed the necessary balancing and in his discretion decided to admit the evidence. Moreover, he instructed the jury that the evidence was offered only for a limited purpose and that they should not consider the truth of the charges in the pending complaint. On this record Perez has failed to make the "clear showing of abuse of discretion" which would require us to reverse the district court. *United States v. Jamil*, 707 F.2d 638, 642 (2d Cir. 1983).

Perez claims that Judge Sweet's intent to use a criminal contempt sentence to coerce him into testifying was revealed when, at sentencing, Judge Sweet told him:

You can walk out of jail any day you want to. At least for three months, or is it four—four, I guess, after the imposition of sentence.

\* \* \* \* \* \*

But as I say, let the responsibility be clear: you can walk out of jail any day you want to, as long as you are willing to adopt the principles of the country [by testifying to the grand jury].

These comments, Perez argues, demonstrate a coercive purpose which, while appropriate to imprisonment for civil contempt, was entirely improper for criminal contempt.

■ Despite the general principle that "civil and criminal [contempt] sentences serve[ ] distinct purposes, the one coercive, the other punitive and deterrent ...", *Yates v. United States*, 355 U.S. 66, 74, 78 S.Ct. 128, 133, 2 L.Ed.2d 95 (1957), with a criminal contempt for refusal to testify the district judge is permitted to grant more

lenient treatment on a motion under Fed.R. Crim.P. 35 when the defendant shows a change of heart by agreeing to testify. In *Brown v. United States*, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), *overruled on other grounds*, *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), a case which upheld a criminal contempt sentence of fifteen months' imprisonment for refusing to testify to a grand jury, the majority opinion closed by inviting the district court to reduce the sentence if the contemnor rectified his behavior:

If within 60 days of the termination of these proceedings the petitioner indicates his willingness to testify, the District Court will no doubt consider that fact in passing upon a motion for reduction of his sentence under Rule 35 of the Federal Rules of Criminal Procedure.

359 U.S. at 52 n. 15, 79 S.Ct. at 548 n. 15.

■ In the present case, Judge Sweet's comments clearly referred to the 120 day period in which a Rule 35 motion for reduction of sentence could be made; accordingly, we find no merit in Perez's claim that Judge Sweet's punitive sentence was rendered improper simply because he pointed out to Perez the availability of his last hope for obtaining more lenient treatment.

Finally, we conclude as to Perez, as we did with Sanchez, that the record provides sufficient justification for imposing a four-year sentence. We therefore affirm Perez's conviction and sentence.

### III. CONCLUSION

The convictions and sentences of Gracia and Perez are affirmed; Sanchez's conviction is also affirmed, but his sentence is reduced from nine years' to four years' imprisonment.