**UNITED STATES of America**

v.

**Roy "Mike" MISENHEIMER.**

**No. SCr. 87–17(01).**

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 14, 1988.

William Grimmer, Asst. U.S. Atty., South Bend, Ind., for U.S.

Robert D. Truitt, Valparaiso, Ind., for Roy "Mike" Misenheimer.

## SENTENCING MEMORANDUM

MILLER, District Judge.

### I.

Roy "Mike" Misenheimer is 50 years old. He is named in fifty-three counts of a twenty-two defendant criminal indictment charging conspiracy to commit an offense against the United States, mail fraud, wire fraud and presenting altered United States

postal money orders. If convicted on all counts of the indictment against him, Mr. Misenheimer would face imprisonment for as long as 265 years and fines totalling $130,000.00.

The government sought, and was granted, an order directing Mr. Misenheimer to provide handwriting exemplars for expert analysis. Through counsel, Mr. Misenheimer objected to the order, claiming that requiring such exemplars would violate his constitutional rights. The court overruled the objection and ordered Mr. Misenheimer to produce the exemplars. *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (taking handwriting exemplar not a search or seizure under the Fourth Amendment); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplar not testimonial evidence subject to Fifth Amendment right against self-incrimination).

Upon Mr. Misenheimer's continued refusal to provide exemplars, the government moved to have Mr. Misenheimer held in criminal contempt. On December 30, 1987, Mr. Misenheimer entered a plea of guilty to criminal contempt.

## II.

Mr. Misenheimer refused to provide exemplars on August 25 (before the court overruled his constitutional objections), September 30, and October 1, 1987. The government notes that Mr. Misenheimer again was made aware of the order for handwriting exemplars in open court on December 7, at the time of the hearing on the government's petition for a rule to show cause. Mention of a date after November 1, 1987 evokes concern whether the Sentencing Guidelines that became effective that date, 28 U.S.C. § 994(a)(2), would govern the sentence in this case; at sentencing, the government stated its belief that the guidelines would apply. The court deems those guidelines to apply only to offenses committed on or after November 1, and further views Mr. Misenheimer's offense as having been complete before November 1. Because the court would reach the same conclusion with respect to the proper sentence under the guidelines, however, the court will analyze the guidelines.

Section 2J1.1 of the guidelines provides, "If the defendant was adjudged guilty of contempt, the court shall impose a sentence based on stated reasons and the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2)." That analysis is set forth in part III of this memorandum. The Application Note to § 2J1.1,[1] however, cites to the guideline for other offenses, which provides that if no specific guideline has been promulgated, the court should apply the most analogous guideline, if an analogous guideline can be found. § 2X5.1(a).[2]

The search for an analogous guideline would lead the court to § 2J1.2 (Obstruction of Justice).[3] Application of that guide-

---

1. The Application Note to § 2J1.1 provides:
   Because misconduct constituting contempt varies significantly and the nature of the contemptuous conduct, the circumstances under which the contempt was committed, the effect the misconduct had on the administration of justice, and the need to vindicate the authority of the court are highly context-dependent, the Commission has not provided a specific guideline for this offense. *See*, however, § 2X5.1 (Other Offenses).

2. Section 2X5.1(a) provides:
   For offenses for which no specific guideline has been promulgated:
   (a) If the offense is a felony or class A misdemeanor, the most analogous guideline should be applied. If no analogous guideline exists, any sentence that is reasonable and consistent with the purposes of sentencing should be imposed.

3. Section 2J1.2 provides:
   (a) Base Offense Level: 12
   (b) Specific Offense Characteristics
   (1) If the defendant obstructed or attempted to obstruct the administration of justice by causing or threatening to cause physical injury to a person or property, increase by 8 levels.
   (2) If the defendant substantially interfered with the administration of justice, increase by 3 levels.
   (c) Cross Reference
   (1) If the conduct was obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to such criminal offense, if

line would produce an offense level of 15.[4] Mr. Misenheimer would be assessed a criminal history score of 8.[5] An offense level of 15, coupled with a criminal history score of 8, would call for imprisonment for a period of not less than thirty months nor more than thirty-seven months. § 5A.

To the extent the Sentencing Guidelines apply and the guideline for Obstruction of Justice is analogous, however, the court would depart from the guidelines. *See* 18 U.S.C. § 3553(b) (court may depart from guideline sentence if it "finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission formulating the guidelines and that should result in a sentence different from that described").

The guideline for Obstruction of Justice would allow a greater sentence if a greater sentence was called for by the guideline for Accessory after the Fact. That guideline, in turn, is governed by the guideline for the underlying felony. The Sentencing Guidelines would not, however, govern Mr. Misenheimer's sentencing for the underlying felonies, all of which allegedly occurred in 1982 and 1983. The greatest sentence permitted under the Sentencing Guidelines for the underlying fraud offenses would be forty-one to fifty-one months.[6] In this case, however, Mr. Misenheimer faces imprisonment for as long as 265 years.

Accordingly, the court would depart from the guidelines if those guidelines required sentencing within the range provid-ed for Obstruction of Justice. The court would instead sentence Mr. Misenheimer in accordance with the provisions of § 3553(a), which the court also would do if the guidelines did not apply to Mr. Misenheimer's case. As stated at the outset of this section, the court concludes that the Sentencing Guidelines do not apply.

### III.

18 U.S.C. § 3553(a) provides that sentencing courts are to consider the crime's nature and circumstances; the defendant's history and characteristics; the need for the sentence imposed to reflect the crime's seriousness, to promote respect for the law, to provide fair punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from the defendant's future crimes, and to provide the defendant with needed correctional treatment in the most effective manner. The court is also to consider the kinds of sentences available.

Further, because Congress has prescribed no maximum sentence for criminal contempt, courts "have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection". *Green v. United States,* 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958). A sentence for criminal contempt should reflect the "least possible power adequate to the end proposed". *United States v. Wilson,* 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975);

---

the resulting offense level is greater than that determined above.

4. Subsections (a) and (b) would yield an offense level of 15, because his conduct substantially interfered with the administration of justice but did not cause or threaten injury to person or property. Pursuant to § 2J1.2(c)(1), the court then would turn to § 2X3.1, which provides for a base offense level "6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30."

All fifty-three of the underlying offenses would be governed for sentencing purposes by § 2F1.1 (Fraud and Deceit). *See* § 2X1.1 (Conspiracy). That section would provide a base offense level of 6, which could be increased to not more than 18 under § 2F1.1(b). *See also* §§ 3D1.1–3D1.5 (Multiple Counts). A level six

levels below that, § 2X3.1, would be 12, a level lower than the level of 15 provided by § 2J1.2 (Obstruction of Justice). Accordingly, the offense level of 15 would be more analogous than any other.

5. Mr. Misenheimer has two prior unrelated convictions with sentences of imprisonment exceeding one year and one month that he has served within the past fifteen years; three points would be counted for his criminal history score for each of those convictions. § 4A1.1(a). Because Mr. Misenheimer committed this offense of criminal contempt while under a criminal justice sentence, two additional points would be assessed. § 4A1.1(d).

6. This figure is based on an offense level of 18 and a criminal history of 8. The offense level might be lower.

*United States v. Bukowski,* 435 F.2d 1094, 1110 (7th Cir.1970), *cert. denied* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). When sentencing for contempt, courts are to consider:

> ... the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future.

*United States v. United Mine Workers of America,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947).

■ Most of the factors set forth in the statute and the case law favor imposition of a substantial sentence:

*A. The crime's nature and circumstances.* Mr. Misenheimer's criminal contempt was non-violent; no person or property was injured. Further, the court recognizes that the Supreme Court was not unanimous in concluding that the Constitution presents no impediment to requiring a criminal defendant to provide handwriting exemplars.

Mr. Misenheimer's offense has the potential effect, however, of depriving the government of evidence to which it is entitled, perhaps weakening the government's case, in which Mr. Misenheimer is charged with fifty-three counts, and in which several other defendants are charged with multiple counts. Accordingly, the government has sought severance and a continuance of Mr. Misenheimer's trial until such time as Mr. Misenheimer produces the requested exemplars, which would injure the public's interest in a speedy trial, 18 U.S.C. § 3161, and require the public to bear the cost of an additional trial.

*B. The defendant's history and characteristics.* This sentencing factor presents no mitigation. It is wholly aggravating. Mr. Misenheimer was first convicted of a felony in 1956 when, as a 19-year-old in North Carolina, he was convicted of robbing a service station, for which he received an indeterminate sentence of two to three years. He was paroled, but that parole was revoked when he was arrested in Louisiana in 1958 for attempted kidnapping; that charge was reduced to battery, to which he pleaded guilty and was sentenced to one year in jail.

In 1959, a month after parole on his North Carolina conviction, Mr. Misenheimer attempted to steal a car in Indiana; he cut the driver with a knife. He pleaded guilty to inflicting physical injury in the commission of a felony; four other felony warrants, including warrants for rape and attempted murder, were dismissed. He was sentenced to life imprisonment. In 1965, while an escapee, Mr. Misenheimer was convicted in Ohio for malicious entry, for which he was sentenced to one to two years before his return to prison in Indiana.

In July, 1975, Mr. Misenheimer was released on five years' probation on his Indiana life sentence. In November, 1975, he was arrested for kidnapping and armed sodomy. He was convicted of those offenses following a jury trial, and was sentenced to consecutive sentences of life imprisonment and twenty years, both of which run consecutively to his 1959 sentence of life imprisonment.

At the time Mr. Misenheimer committed criminal contempt, then, as well as at the time of the alleged underlying offenses, he was serving two consecutive life sentences, to be followed by a twenty-year sentence. While in prison, he has been reported for serious misconduct on several occasions, including escape, weapons, drugs, holding a hostage and attempted rape.

*C. The need for the sentence imposed to reflect the crime's seriousness.* Mr. Misenheimer's offense is a serious one. He has refused a direct court order and thereby deprived the government of potential evidence without justification.

*D. The need for the sentence to promote respect for the law.* This consideration favors a significant sentence. The need to promote respect for the law is the very essence of the need to punish the offense of criminal contempt. Mr. Misenheimer was ordered to perform an act, his objections to the order were heard and

overruled, and he steadfastly has refused to perform as ordered.

*E. The need for the sentence to provide fair punishment for the offense.* This factor favors a very significant sentence. Mr. Misenheimer presently serves consecutive sentences of two life terms and another twenty years; he faces further sentences in excess of two and a half centuries in the underlying criminal prosecution. A sentence of a few months' imprisonment hardly can be meaningful to one already facing so overwhelming a sentence. At the very least, any sentence of incarceration imposed in this cause must be ordered to be served consecutively to Mr. Misenheimer's previously existing sentences.

*F. The need for the sentence to afford adequate deterrence to criminal conduct.* This factor, too, favors imposition of a significant sentence. Other defendants in this action face orders or motions for production of handwriting exemplars. Many of those defendants are serving lengthy sentences; some are serving sentences of life imprisonment. News of a criminal contempt sentence of a few months, or even a few years, is unlikely to deter those persons from disobedience such as Mr. Misenheimer's.

*G. The need for the sentence imposed to protect the public from the defendant's future crimes.* This factor provides no sentencing guidance in this case. Mr. Misenheimer faces imprisonment of staggering length without regard to this sentence. He was already incarcerated at the time of his offense. No sentence for contempt will afford the public any greater protection from Mr. Misenheimer's future conduct.

*H. The need for the sentence imposed to provide the defendant with needed correctional treatment in the most effective manner.* This factor offers no guidance in sentencing. The court makes no pretense that any sentence imposed in this case will offer correctional treatment beyond that of deterring possible future disobedience of court orders.

■ *I. The kinds of sentences available.* The court may impose a fine or a sentence of imprisonment, but not both.

*United States v. Hilburn,* 625 F.2d 1177 (5th Cir.1980); 18 U.S.C. § 401. The earlier finding that Mr. Misenheimer is indigent renders a fine unrealistic and unenforceable. This factor favors incarceration.

*J. The extent of the willful and deliberate defiance of the court's order.* As noted above, Mr. Misenheimer has refused on more than one occasion to comply with the order, even after his objections to the order were considered and overruled.

*K. The seriousness of the consequences of the contumacious behavior.* As noted above, Mr. Misenheimer's offense may deprive the government of evidence to which it is entitled in a case in which Mr. Misenheimer is charged with fifty-three counts, injure the public's interest in a speedy trial, injure the government's interest in proceeding to trial before its evidence becomes more stale, and require the public to bear the cost, and the witnesses to bear the inconvenience, of an additional trial.

*L. The necessity of effectively terminating the defendant's defiance as required by the public interest.* Although this factor fits more comfortably in the context of civil contempt than criminal contempt, *see United States v. Hughey,* 571 F.2d 111 (2d Cir.1978), the court notes that if Mr. Misenheimer continues to refuse to provide the government with handwriting exemplars, his trial may be delayed by many months, or even years. *See Barber v. Scully,* 731 F.2d 1073 (6th Cir.1984); *United States v. Askew,* 584 F.2d 960 (10th Cir.1978), *cert. denied* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). The public has an interest in trial as soon as reasonably possible. 18 U.S.C. § 3161.

*M. The importance of deterring such acts in the future.* As discussed above, deterrence is made important by the pendency of motions to require other defendants in the underlying prosecution to produce handwriting exemplars.

## IV.

Analysis of statutory factors and the factors developed under the case law leads the court to conclude that a substantial sentence for Mr. Misenheimer is warrant-

ed. The absence of any statutory maximum for criminal contempt renders complex the definition of a substantial sentence for this offense.

In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court suggested that, even absent an Eighth Amendment attack on a sentence, a sentencing court always should consider proportionality by taking into account sentences for similar offenses, sentences imposed on similarly situated offenders and sentences for the same offense in different jurisdictions. Accordingly, a review of other reported sentences for criminal contempt may be instructive.

In *United States v. Ray*, 683 F.2d 1116 (7th Cir.), *cert. denied* 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1982), the court upheld a three-year sentence for refusal to produce handwriting exemplars; the defendant, who had earlier given exemplars in which he had distorted his handwriting, faced a charge of bank robbery. In *United States v. Berardelli*, 565 F.2d 24 (2d Cir. 1977), the court upheld a five-year sentence for refusing to testify at a criminal trial after being granted immunity.

In *United States v. Patrick*, 542 F.2d 381 (7th Cir.1976), *cert. denied* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977), the court upheld a four-year sentence for refusing to testify at a criminal trial after being granted immunity; the court noted that perjury and obstruction of justice each carried potential terms of imprisonment for five years. In *United States v. Sternman*, 433 F.2d 913 (6th Cir.1970), a three-year sentence for refusing to testify at a grand jury after a grant of immunity was upheld. In *United States v. Thompson*, 214 F.2d 545 (2d Cir.), *cert. denied* 348 U.S. 841, 75 S.Ct. 48, 99 L.Ed. 663 (1954), the court upheld a four-year sentence for a defendant who had failed to report as ordered to serve his sentence. In *Green v. United States*, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed. 2d 672 (1958), the Court upheld a three-year sentence for similar conduct, noting that bail-jumping carried a statutory five-year maximum sentence.

In *United States v. Gracia*, 755 F.2d 984 (2d Cir.1985), the court considered sentences imposed by different district judges on three defendants for refusing to testify before a grand jury. One defendant had been sentenced to nine years, another to four years, and the other to four months' imprisonment followed by four years' probation. The court upheld the shorter sentences, but reduced the nine year sentence to four years. The court based its ruling on three considerations: (1) had the defendant lied rather than refused to testify, he would have faced a five-year sentence for perjury; (2) nothing in the record warranted so great a disparity between the nine-year and four-year sentences; and (3) "no other court of appeals has ever affirmed a criminal contempt sentence in excess of five years". 755 F.2d at 990.

In *United States v. Leyva*, 513 F.2d 774 (5th Cir.1975), the court reduced a thirty-five year sentence for refusal to testify before a grand jury to two years after comparing the maximum sentences for civil contempt (eighteen months), perjury (five years) and obstruction of justice (five years). In *United States v. Gomez*, 553 F.2d 958 (5th Cir.1977), the court considered a fifteen-year sentence for refusing to testify before a grand jury after a grant of immunity; the sentence was ordered to be served consecutively to an earlier twenty-year (aggregate) sentence. Noting the same factors as in *Leyva*, the court reduced the sentence to two years, to be served consecutively to the sentence on the earlier conviction.

In *United States v. Green*, 630 F.2d 566 (8th Cir.1980), *cert. denied* 449 U.S. 904, 101 S.Ct. 277, 66 L.Ed.2d 135 (1981), the court reduced five consecutive two-year sentences for repeatedly assisting inmates in filing frivolous lawsuits; the court reduced the sentences to consecutive five-month sentences. In *United States v. Bukowski*, 435 F.2d 1094 (7th Cir.1970), *cert. denied* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed. 2d 809 (1971), the court reduced, with little explanation, a juror's sentence for violating the admonition concerning extrajudicial communication from three years to eighteen months.

That the government has requested a sentence of twenty-five years, far in excess of the sentences imposed in the foregoing cases, bespeaks the importance of imposition of a significant sentence. The court must bear in mind, however, that:

(1) the offense for which Mr. Misenheimer is to be sentenced is one for which most states have imposed statutory maximum sentences of far less than five years;

(2) the government has been unable to direct the court to any case in which a sentence of more than five years has been imposed for criminal contempt;

(3) the most closely analogous federal offense is obstruction of justice, which carries a statutory maximum sentence of five years' imprisonment, 18 U.S.C. § 1510;

(4) the two defendants already sentenced under this indictment received, following guilty pleas, sentences of twelve and fourteen years, roughly half the sentence requested by the government; and

(5) Mr. Misenheimer received a state sentence of twenty years' imprisonment for armed sodomy, a crime far more serious than that for which he is to be sentenced.

### V.

While no reported case has upheld a sentence for criminal contempt in excess of five years, this case presents two powerful considerations not remotely found in the reported cases. First, Mr. Misenheimer already faces ponderous sentences. While the sentences imposed for failure to report to serve a five-year sentence in *Green v. United States*, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672, and *United States v. Thompson*, 214 F.2d 545, likely were meaningful to the contemnors because their overall sentences were increased by sixty to eighty percent, no like proportionality is available to this court. No reported case presents so dramatic a contrast between other sentences and the criminal contempt sentence. If a sentence for criminal contempt is to punish contumacious behavior, the sentence must be sufficient to be felt by the contemnor.

Second, several of Mr. Misenheimer's co-defendants already serve sentences similar to those Mr. Misenheimer now serves; those are the persons most immediately to be deterred by this sentence. While deterrence of others was a meaningful factor in several of the reported cases, particularly those in which the contempt consisted of refusal to testify even under immunity, in no case were those to be deterred similarly situated to the contemnor. If deterrence is to be a goal of a sentence for criminal contempt, the sentence must be sufficient to deter.

Accordingly, even recognizing that a sentence of more than five years will exceed any sentence heretofore upheld in a reported case for criminal contempt, the court concludes that this case presents circumstances sufficiently unique to warrant such a sentence. The court cannot agree with the government, however, that the record justifies a sentence five times greater than any previously upheld. The court concludes that the defendant should be sentenced to the custody of the Attorney General of the United States or his authorized representative for imprisonment for a term of ten (10) years, to be served consecutively to his present state sentences.

SO ORDERED.