**Leslie E. HINTZ, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 81–2942.**

United States Court of Appeals, Seventh Circuit.

Submitted June 2, 1983.[*]

Decided July 11, 1983.

---

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Leslie E. Hintz, pro se.

Kenneth W. Gideon, Chief Counsel, I.R.S., Washington, D.C., for respondent-appellee.

Before WOOD, CUDAHY and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

This case arises out of the 1977 United States federal income tax return filed by Leslie and Gladys Hintz. The Hintzes contend that they are entitled to certain deductions and a tax credit, which the Internal Revenue Service has disallowed. The United States Tax Court agreed with the IRS and ruled that the Hintzes had a deficiency in income tax due for the taxable year 1977 in the amount of $12,555.90. It is from this decision that the Hintzes appeal. We affirm the judgment of the Tax Court.

I.

Leslie E. Hintz was employed as a locomotive engineer by the Soo Line Railroad Company. In September of 1971 Hintz was placed on sick leave by the Railroad following hospitalization for severe chest pain. Hintz ultimately underwent cardiopulmonary bypass surgery. Post-operative examinations, by Hintz's personal physician as well as the Railroad's company doctor, indicated that the heart operation had been successful and on October 13, 1972, Hintz reported back to work at the Railroad. The Railroad's medical director reexamined Hintz and, based upon the medical director's findings and conclusions, disqualified Hintz from returning to work as a locomotive engineer. Instead, Hintz was assigned as a relief towerman, a job paying a considerably lower wage than that of an engineer.

Hintz filed suit against the Railroad seeking return to his former position as engineer, alleging that the Railroad had discriminated against him because of his physical handicap (heart disease). The Wisconsin Department of Industry, Labor, and Human Relations reinstated Hintz to his former position of locomotive engineer and awarded backpay. On appeal, this decision was affirmed by the Circuit Court of Dane County, Wisconsin.

The parties then entered into negotiations and reached a settlement as to the amount of backpay to which Hintz was entitled. Hintz was awarded $50,000 in back wages covering the period from October of 1972 through May of 1976. The following deductions from the $50,000 were also agreed upon: (1) $10,000 in federal withholding tax; (2) $3,500 in State of Wisconsin withholding tax; (3) $1,716.51 in Railroad Retirement tax; (4) $1,689.10 in repayment to the Railroad Retirement Board for sickness insurance benefits previously drawn; and (5) $4,830.38 in repayment to the Railroad Retirement Board for unemployment insurance benefits previously drawn.[1] The deductions for repayment of the sickness and unemployment insurance benefits were uncontested and required by law. See 45 U.S.C. § 352(f). Hintz ultimately received the balance of the settlement, $28,264.01, in 1977.

---

1. The record indicates that Hintz had drawn $635.00 in sickness benefits in 1972 and $1,054.10 in 1973. Hintz also had drawn $508.00 in unemployment benefits in 1973, $1,365.25 in 1974, $1,301.75 in 1975, and $1,655.38 in 1976.

On their 1977 federal income tax return, the Hintzes chose not to include the $50,000 settlement as income. The Internal Revenue Service, however, adjusted the Hintzes' reported income and included the $50,000. In part because of this substantial increase in income reported, it became advantageous for the Hintzes to itemize their deductions, something they had not previously done. Accordingly, the IRS, in computing the Hintzes' tax deficiency, itemized the Hintzes' deductions.

After the IRS notified the Hintzes of their tax deficiency, the Hintzes filed a petition for redetermination with the United States Tax Court. Their primary contention was that if the $50,000 backpay award was to be included as income, a deduction from income should be allowed for the repayment of the sick pay and unemployment benefits. The Hintzes also requested that they be either credited or refunded the difference between the amount of Railroad Retirement tax actually withheld from them in fiscal 1977 and the amount they alleged that properly should have been withheld. Finally, the Hintzes claimed that the amount allowed by the Commissioner as a property tax deduction should have been $746.75, rather than $660.00.

After having filed their petition for reconsideration with the Tax Court, the Hintzes filed an Amended Tax Form 1040–X with the IRS. In this tax return they reported the $50,000 backpay award as income, deducted the sick pay and unemployment benefits repaid to the Soo Line, and claimed a tax credit for the excess Railroad Retirement taxes paid. They also claimed a deduction of $746 for property taxes paid.

The United States Tax Court, however, rejected all of the Hintzes' contentions. The court first ruled that the sick pay and unemployment benefits that had been deducted from the $50,000 as a payback to the Railroad Retirement Board could not be deducted from income, reasoning that since the benefits had not initially been declared as income when they were received, no deduction should be allowed when they were repaid. As to the Hintzes' contention that they had overpaid their Railroad Retirement tax for 1977 and thus deserved a tax credit, the Tax Court held that it was without jurisdiction to decide the question. The court advised the Hintzes that if they felt they had overpaid, they should immediately apply for a refund with the Soo Line or the IRS. Finally, in view of the fact that the Hintzes had not submitted any evidence in support of their claim that they were entitled to a larger property tax deduction than the one already allowed by the IRS, the Tax Court ruled that the Hintzes were not entitled to a larger deduction. The Tax Court concluded that the Hintzes were deficient in their taxes in the amount of $12,555.90 and accordingly entered judgment in that amount. This appeal followed.

## II.

The first issue we address is the Hintzes' contention that they should be allowed to deduct the benefits subtracted from the $50,000 settlement from their declared 1977 taxable income.

Preliminarily, we note that the Hintzes conceded at trial that the $50,000 backpay award was properly includible in their 1977 gross income.[2] It is also clear that the sick pay and unemployment benefits that the Hintzes received from 1972 to 1976 were never subject to taxation nor ever reported as income by the Hintzes. See 45 U.S.C. § 352(e). Upon receipt of the backpay award, however, the Soo Line was obligated to reimburse the Railroad Retirement Board for the benefits paid. See 45 U.S.C. § 352(f). The Railroad thus subtracted the amount of the benefits from the settlement award received by Hintz. It is this payback that the Hintzes seek to deduct.

The mere fact that the Hintzes were required by law to reimburse the Rail-

2. That the $50,000 in backpay was properly classified as 1977 gross income subject to tax is clear. Because the Hintzes employed the cash basis of accounting in computing their income, the $50,000 was properly includible in gross income in the year of its receipt.

road Retirement Board for the benefits previously received does not of itself entitle the Hintzes to deduct the repayments from taxable income. Income tax deductions are typically matters of legislative grace. As a general matter, a deduction from income for tax purposes may be taken only when support for it can be found in the language of a statute, appurtenant regulations, or legislative history. *See Quinn v. Commissioner*, 524 F.2d 617, 625 (7th Cir.1975). This rule may at times lead to harsh results. General equitable considerations, however, may not control the question of whether certain deductions are or should be permissible. *Deputy v. du Pont*, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940). It is up to Congress alone to be lavish or miserly in remedying perceived inequities in the tax structure. *Lewyt Corp. v. Commissioner*, 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029 (1955). The responsibility of the judiciary is merely to effectuate the will of Congress. We can only take the Code as we find it and give it an internal symmetry and consistency as its words permit. *United States v. Olympic Radio & Television*, 349 U.S. 232, 236, 75 S.Ct. 733, 736, 99 L.Ed. 1024 (1955). Rarely will there exist a principled extra-statutory ground consistent with the intent of Congress that will permit a court to go beyond the express bounds of a statute. *See, e.g., Home Mut. Ins. Co. v. Commissioner*, 639 F.2d 333, 340 (7th Cir. 1980) (en banc). In every case, it is the taxpayer who bears the burden of showing that he or she is entitled to a particular deduction. *See Schubert v. Commissioner*, 286 F.2d 573, 582 (4th Cir.), *cert. denied*, 366 U.S. 960, 81 S.Ct. 1919, 6 L.Ed.2d 1253 (1961).

The Hintzes do not point to any particular statute of the internal revenue code to justify their claimed deduction. Rather, they argue that because the benefits at the time of their receipt were not subject to taxation, by virtue of the benefits being subtracted from the $50,000 and by including the total $50,000 as gross income, the benefits are now indirectly being taxed. To remedy this, the Hintzes argue, a deduction for their repayment should be allowed.

■ This argument cannot prevail. As the Tax Court correctly pointed out, when an item of "income" received in an earlier year is repaid in a later year, the threshold requirement for deductibility upon the repayment is that some portion of the item must have been taxable upon its receipt. The Supreme Court's decision in *United States v. Skelly Oil Co.*, 394 U.S. 678, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969), supports this proposition. In *Skelly Oil*, the taxpayer, an Oklahoma producer of natural gas, refunded $505,536.54 in overcharges to two of its customers. At the time the company had initially received the excessive payments in the previous year from its customers, the total amounts received were included in gross income. The Government allowed a 27½ percent depletion deduction on the payments, however, therefore exposing only 72½ percent of the total receipts ($366,513.99) to actual taxation. The next year, after refunding the overcharges to its customers, Skelly Oil attempted to deduct the entire amount of overcharge that had been returned to its customers. The Supreme Court denied the deduction, concluding that because 27½ percent of the overcharges had not been initially subject to any tax, a similar 27½ percent could not now be deducted for Skelly Oil's repayment of the overcharge to its customers. Said the Court:

"In essence, oil and gas producers are taxed on only 72½% of their 'gross income from the property' whenever they claim percentage depletion. The remainder of their oil and gas receipts is in reality tax exempt. We cannot believe that Congress intended to give taxpayers a deduction for refunding money that was not taxed when received."

*Id.* at 685, 89 S.Ct. at 1383–1384. Although *Skelly Oil* dealt with the deductibility of items previously received as gross income for which deductions were allowed, the underlying principle (that the excludable character of funds which are not considered as gross income when received should not be ignored when their deduction is sought for their repayment in a later year) is applica-

ble in the present case. *See also Arrowsmith v. Commissioner,* 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (1952).

▮ The above conclusion is also consistent with the practical effect in the backpay award. The award was intended to place Hintz in the position he would have been in had he not been wrongfully disqualified from his former position. The award was intended to make Hintz "whole" for his previous lost employment. Had Hintz never been wrongfully disqualified from his position as locomotive engineer, he never would have received or been entitled to the benefits that he was later required to repay. To have kept both the benefits as well as the back wages would have given Hintz a windfall to which he was not entitled. Having been made whole, he cannot claim a windfall by deducting the return of the sick pay and unemployment benefits. Accordingly, the Hintzes' claim must fail.

### III.

The Hintzes also contend that they are entitled to a tax credit of $1,766.51, the amount of Railroad Retirement tax that they allege was excessively withheld from the $50,000 backpay settlement. The Railroad Retirement Tax Act imposes a maximum limit on the rate of an employee's railroad retirement tax. *See* 26 U.S.C. § 3201. In this case, because the $50,000 backpay award was added to the Hintzes' 1977 income (from which the maximum amount of railroad retirement tax had previously been deducted), all of the railroad retirement tax withheld from the $50,000 was apparently excessive.[3] Indeed, the Internal Revenue conceded before the Tax Court that the railroad retirement tax withholdings on the $50,000 were excessive. The Tax Court, however, declined to grant any relief on the ground that it lacked

jurisdiction to make an adjustment (such as a credit or to order a refund) with respect to the excessive railroad retirement tax deductions. It is this conclusion that is challenged on appeal.

▮ As a general matter, the Tax Court is a court of limited jurisdiction, with only such powers as were bestowed upon it by Congress. *Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418, 420, 64 S.Ct. 184, 185–186, 88 L.Ed. 139 (1943). The Internal Revenue Code fails to recite any statutory entitlement that the Tax Court has to make any adjustments with respect to excessive railroad retirement tax deductions. Rather, such a situation is provided for in 26 U.S.C. § 6413. That section does provide that in the situation where an overpayment has been made, an attempt should be made to adjust the overpayment between employer and employee. *See* 26 U.S.C. § 6413(a). This adjustment process has been set forth in regulations promulgated by the Secretary of the Treasury Department and his delegates.[4] In the event the overpayment cannot be adjusted, an application for a refund should be made with the IRS pursuant to other IRS regulations.[5] Finally, as a last resort, a civil action may be instituted in district court. *See* 28 U.S.C. § 1346.

In sum, Congress has enacted a comprehensive scheme for securing repayment of excessive railroad retirement taxes. The Tax Court was correct in concluding that the Hintzes' proper route for recovery was not in the jurisdiction of the Tax Court but in other areas. This conclusion must not be disturbed.

### IV.

The final issue we must address concerns the amount that may be deducted as a

---

**3.** The Tax Court noted that had the $50,000 backpay settlement been prorated over the years in which it would have been earned, no excessive withholding would have resulted.

**4.** 26 C.F.R. § 31.6413(a)–1(b)(1)(i) states in applicable part that:

"If an employer collects from any employee and pays to the district director more than

the correct amount of employee tax under section 3101 or section 3201, * * * and if the error is ascertained within the applicable period of limitation on credit or refund, the employer shall repay or reimburse the employee in the amount thereof * * *."

**5.** *See* 26 U.S.C. § 6413(b); 26 C.F.R. § 31.-6402(a)–2(b)(1).

**286**

property tax expense on the Hintzes' 1977 tax return. The Hintzes argue that they are entitled to a property tax deduction of $746.75; the Commissioner maintains that they are entitled to a lesser deduction of $660.00. The Tax Court resolved the dispute in favor of the Commissioner, stating that the Hintzes had failed to present any affirmative evidence demonstrating that the decision of the Commissioner was erroneous.[6]

 Rule 142 of the Tax Court states that the burden of proof in a Tax Court proceeding is typically upon the petitioner.[7] Tax determinations made by the Commissioner are presumed to be correct, *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), and specific evidence to support a claimed deduction is necessary in order to refute this presumption. *Oliver v. Commissioner,* 553 F.2d 560, 561 (8th Cir. 1977). A taxpayer's unsupported statement that he or she is entitled to a particular deduction will not be sufficient to support the claimed deduction. A taxpayer must present sufficient evidence to show that the assessment of the IRS is "arbitrary or erroneous." *United States v. Stonehill,* 702 F.2d 1288, 1294 (9th Cir.1983).

 In this case, the record indicates that the Hintzes failed to substantiate in the Tax Court their claimed property tax deduction of $746.75. Although they have now provided documentation supporting their claim in their appellate brief, the record is barren of any showing that this evidence was ever presented to the Tax Court. We thus may not consider the newly submitted evidence. As an appellate court, we can only evaluate the record as it was before the Tax Court. Accordingly, in light of the absence of any specific evidence to the contrary, the Tax Court properly sustained the Commissioner's determination

regarding the Hintzes' property tax expense deduction.

## V.

Accordingly, for the reasons discussed herein, the judgment of the Tax Court is hereby AFFIRMED.

---

**6.** The Hintzes had deducted $746.75 on their 1977 tax return as a property tax expense but had failed to provide any documentation to support this claim. Before the Tax Court the Hintzes continued to rely on this claim without providing any substantiation of it.

**7.** Rule 142 of the United States Tax Court provides in applicable part:

The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court * * * * *. Tax Court Rule 142(a).