Arnold I. KRAMER,
Petitioner-Appellant,

v.

O.C. JENKINS, Warden, and United
States Parole Commission,
Respondents-Appellees.

No. 86–1849.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1986.
Decided Oct. 15, 1986.

Julius Lucius Echeles, Sharon C. Kramer, Chicago, Ill., for petitioner-appellant.

William F. Murphy, Asst. U.S. Atty., Anton R. Valukas, U.S.A. Atty., Chicago, Ill., for respondents-appellees.

Before BAUER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

This case is fated to be known as *Kramer V*, and *V* is probably not the highest Roman numeral we shall have to append to Kramer's name. *Kramer I* was an unpublished order affirming Arnold Kramer's convictions on four counts of wilfully failing to file income tax returns and one count of filing a false tax document. The district court imposed consecutive one-year terms on the misdemeanor failure-to-file counts and five years' probation on the felony false-filing count. The total was four years in prison.

*Kramer II* was a collateral attack on *Kramer I*. Kramer maintained that the district court had not complied with Fed.R. Crim.P. 32(c)(3)(D), which requires the court to resolve disputes about statements in the presentence report or to state in writing that he does not rely on the challenged statements. *Kramer v. United States*, 788 F.2d 1229 (7th Cir.1986). We concluded that the district court had not complied with Rule 32 concerning the statement in the presentence report that the IRS believed that Kramer evaded payment of some $329,000 in taxes. On remand the district court determined both that the statement was accurate—because the IRS

indeed believed that Kramer owed the money, whether or not Kramer owed anything—and stated that he had not relied on the assertion. A motion to compel the district court to comply with our mandate led to the conclusion in *Kramer III* that Rule 32 is not satisfied by a finding that the government subjectively believes the assertions in the presentence report. *Kramer v. United States*, 798 F.2d 192 (7th Cir.1986). The district court's alternative finding was sufficient compliance with the mandate, however, so we affirmed the district court's action.

While all of this was going on, Kramer had a parole hearing. The Commission used the estimate of tax liability in the presentence report to conclude that Kramer's offense should be classified in "Category 5" under the Parole Commission's guidelines. The Commission looks to the prisoner's actual offenses, not solely to those of which he was convicted. 28 C.F.R. § 2.19(c). Category 5 includes tax offenses in which "the amount of the tax evaded or evasion attempted is more than $100,000 but not more than $500,000". 28 C.F.R. § 2.20–501(b). Under the Commission's guidelines a person with Kramer's "salient factor score" (a compendium of personal characteristics) who commits a Category 5 offense ordinarily will be held for 24 to 36 months before parole. The Commission decided that Kramer should be treated as the guidelines recommend and kept for the full 36 months. The practical effect of this is a denial of parole, because if Kramer behaves in prison his good time credits (at the rate of seven days per month, 18 U.S.C. § 4161), will require his release soon after the 36–month mark no matter what.

On receiving the decision, Kramer filed an appeal to the National Appeals Board, which is the appellate arm of the Commission, see 18 U.S.C. § 4203(c)(4) and 28 C.F.R. § 2.26(a), and a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Kramer II* had not yet been decided, and Kramer asserted that the Commission's use of the presentence report violated the due process clause of the fifth amendment. He also asserted that he had not been given an adequate opportunity to respond to the information in the hearing examiners' possession and that the evidence was insufficient to support the determination that he had evaded $100,000 or more in taxes. The case was assigned to a district judge other than the one responsible for Kramer's sentence, so there were then three pending actions: before the National Appeals Board, before the habeas corpus judge, and before this court on appeal from the sentencing judge's decision.

The National Appeals Board acted first. It affirmed the regional commissioner's decision on February 6, 1986, without reference to the presentence report. The National Board's full opinion says:

> Commission has received an IRS Deficiency Notice confirming that your tax liability for the years 1976–1979 exceeded $300,000. This notice is treated by the Commission as a conclusive determination of your liability by the agency charged with such responsibility by law. The Commission declines to entertain further argument on the issue thus conclusively settled, and therefore has decided not to order a rehearing in your case. The Commission will not second-guess formal determinations of questions of fact by another agency which has expertise in a matter not possessed by this agency. Your remedy lies in the U.S. Tax Court, which can best decide the issue and best determine whether an expedited decision is warranted under the circumstances.

On May 6, 1986—after *Kramer II* but before *Kramer III*—the district court denied Kramer's petition for a writ of habeas corpus. The court concluded that *Kramer II* had not "found the presentence investigation report invalid", so that the Commission was entitled to rely on it. More, because the National Appeals Board had relied on the deficiency notice rather than the presentence report, the district judge concluded that Rule 32 was not important. The court rejected all of Kramer's other arguments.

■ The appeal from this decision quickly produced *Kramer IV*, holding that Kramer was not entitled to release pending a disposition on the merits. *Kramer v. Jenkins*, 800 F.2d 708 (7th Cir.1986). It has also produced a lively motions practice, growing out of the following observations at the end of *Kramer III:*

> We also defer to the district court's factual finding that "the [Parole] Board apparently treated [Kramer] as if he were tried and convicted of income tax evasion, when in fact he was charged only with failure to file tax returns and with filing a false document with the IRS." In order to correct this error, the Parole Board should only consider that portion of the presentence report which does not contain the amount Kramer allegedly owes. As the district court suggested, the "estimate" should be deleted and the Parole Board should take whatever steps are necessary to redetermine [Kramer's] parole eligibility.

798 F.2d at 195, footnote omitted, first brackets in original. Kramer demanded that the Commission immediately redetermine his eligibility without regard to tax evasion. The Commission declined. The sentencing judge sent the Commission a letter emphasizing that the convictions were unrelated to tax evasion and that he had not relied on the presentence report; the Commission has not yet responded to this letter. And Kramer has filed with us a flurry of documents demanding immediate release—at a minimum an order that the Commission immediately recompute his eligibility—to which the Commission has replied that it was not a party to *Kramer III* and is not bound by our observations. All of the pending motions have been consolidated with the appeal in the habeas case for what has become *Kramer V.*

We agree with the Commission that *Kramer III* does not require a new parole decision. The only question before the court was whether the district judge had complied with the mandate in *Kramer II.* The effect of a violation of Rule 32 on the Commission's processes was not briefed in *Kramer III;* the panel, acting on Kramer's motion without waiting for the government's response, did not discuss any of the statutes governing the Commission's conduct; the Commission was not a party. The issues in this appeal are open to fresh consideration.

■ *Kramer II* and *III* hold that the sentencing judge violated Rule 32(c) but cured the violation by disclaiming reliance on the presentence report's estimate of tax liability and conveying that disclaimer to the Parole Commission. Kramer wants us to hold that the Commission itself may not consider the disclaimed information. We have some doubt whether an argument of this sort may be raised on collateral attack, given the holdings of *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), and *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). To obtain a writ of habeas corpus the petitioner must show that his "custody" is in violation of the Constitution or laws of the United States. *Timmreck* holds that a violation of the Rules of Criminal Procedure is not often (if ever) the same as illegal or unconstitutional custody; *Addonizio* holds that judges may not use collateral review to vindicate their "sentencing expectations" when the Commission denies parole to a person the judge believes should be released. We bypass this difficulty, however, because Kramer has not established that Rule 32 applies to the Commission.

■ The Rules of Criminal Procedure govern the proceedings in "courts", see Fed.R.Crim.P. 1. The Advisory Committee's notes to the 1983 amendments to Rule 32, which for the first time required judges to make factual findings or disclaim reliance, show that the committee was concerned about the use the Commission makes of presentence reports. The notes and the text of the Rule also show, however, that the device selected to deal with potential reliance on questionable statements was clarification or disclaimer in the district court, not an embargo on the transmission of presentence reports to the Com-

mission. The Rule requires the district court to find the facts or let the Commission know that it found the report either too unreliable to be relied on or beside the point. In sum, the Rule "serves two important purposes: to ensure that a defendant receives a fair sentence, and that any subsequent persons who rely on the presentence report are aware of any inaccuracies." *United States v. Carmel*, 801 F.2d 997, 1000 (7th 1986). See also *United States v. Eschweiler*, 782 F.2d 1385 (7th Cir.1986); *United States v. Rone*, 743 F.2d 1169 (7th Cir.1984).

■ The Commission, in turn, is free to use a disclaimed portion of the presentence report if it finds the information sufficiently accurate for its own purposes. After all, the judge has not found the allegations false; he has simply found them questionable or irrelevant for the purpose of sentencing. (We do not consider the effect of a finding by the court that an allegation is false. Such a finding may bind the Commission under doctrines of issue preclusion.) Doubtless a statement by the sentencing judge abjuring reliance is a flag of caution for the Commission. Under 18 U.S.C. § 4207(3), however, the Commission may use the presentence report—and under the rest of § 4207 much else besides. Because the Commission bases parole decisions on the entire offense behavior, and not just on the offenses charged in the indictment, it may legitimately have capacious standards of relevance and look to matters the court finds unnecessary to its own decision.

■ The absence of a limit in § 4207 or any rule leaves the Commission under only constitutional constraints. Sentencing courts may consider a vast range of information, including hearsay and offenses of which the defendant has not been charged. E.g., *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Plisek*, 657 F.2d 920 (7th Cir. 1981). The Supreme Court has analogized parole officials to sentencing courts, free to use all available information and to decide without stating reasons. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 16, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). See also *Solomon v. Elsea*, 676 F.2d 282, 288 (7th Cir.1982). The district court's decision that a piece of information is unimportant for his purposes—perhaps because the court has decided not to use information that he possessed discretion to use or disregard—does not conclude the question whether the same information is useful to the Commission. The Commission's latitude under § 4207 allows it to make an independent judgment. So it was at liberty to use the presentence report initially, and the National Appeals Board was entitled to use the notice that contained the same underlying information.

The National Appeals Board did not simply "consider" the deficiency notice, however. It treated that notice as "conclusive". Kramer insists that this goes too far, both because the Board would not listen to his objections to the estimate of his tax liability and because he never had an opportunity to respond to the deficiency notice, which was issued after his parole hearing. The latter argument is hypertechnical. Kramer has long been on notice of the position of the IRS and has put in his contrary view at every opportunity. The deficiency notice contains the same conclusions as the revenue agent's report, which found its way into the presentence report. Kramer told the hearing examiners everything he had to tell. (The other factual matters considered by the hearing examiners are irrelevant, because the National Appeals Board did not rely on them.)

■ The Board's treatment of the deficiency notice as "conclusive" is more troubling. We held in *Solomon*, 676 F.2d at 290, that the Commission's decisions must have a "factual basis". This followed from our conclusion that the parole statutes and regulations give federal prisoners a "liberty or property" interest in parole, within the meaning of the due process clause of the fifth amendment. Once statutes and rules give prisoners such an interest, the

due process clause requires the government to have some reason for depriving the prisoner of his interest. *Solomon* has been reinforced by *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), which holds that when a state creates a system of good time credits sufficiently secure to amount to liberty or property, it may not take away the credits without a reason—a standard the Court variously described as "some evidence in the record" (105 S.Ct. at 2773) or "a modicum of evidence" (*id.* at 2774) or "any evidence in the record that could support the conclusion" (*ibid.*) or "some basis in fact" (*ibid.*). All of these are variations on the theme that administrative officials need a little evidence but not necessarily very much, a point the Court made when saying that the constitutional standard "does not require examination of the entire record ... or weighing of the evidence." *Ibid.*

The Commission must have a reason for its decision. The record must show that the reason is not fanciful or supositious. But the Commission need not hold adversarial proceedings or have the sort of evidence that would persuade a court. *Greenholtz* emphasizes the informality of the permissible proceedings. The Parole Commission and Reorganization Act of 1976 put judges out of the business of reviewing parole decisions for "substantial evidence" and the like by providing that parole decisions are "committed to agency discretion", 18 U.S.C. § 4218(d), for purposes of the Administrative Procedure Act. The legislative history of the 1976 Act shows that Congress did not want the Commission to act like a court, or the courts to afford full-bore judicial review of the Commission's decisions. See H.R.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 28 (1976), reprinted at 1976 U.S.Code Cong. & Admin. News 335, 360. The Commission has done more than the Constitution requires, adopting a preponderance-of-the-evidence standard for its decisions. 28 C.F.R. § 2.19(c). But courts do not review its decisions as if they were rendered by the Federal Energy Regulatory Commission; § 4218(d) sees to that. And they certainly do not hold de

novo factual inquiries, as Kramer asked the district court to do. Even in cases under the Administrative Procedure Act the court is limited to review of the record before the administrative agency. See *Chrysler Corp. v. Brown*, 441 U.S. 281, 318, 99 S.Ct. 1705, 1726, 60 L.Ed.2d 208 (1979). Our review, with only a shadow of the scrutiny available under the APA, likewise is confined to the record before the Commission and limited to a search for "some evidence" in support of the decision.

No published opinion deals with the question whether the Commission may treat as binding the dispositions of the IRS. The limited scope of judicial review compels the conclusion that it may. The findings underlying the deficiency notice are "some evidence" of tax liability. They are more. The contents of the notice are presumed correct. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Hintz v. CIR*, 712 F.2d 281, 286 (7th Cir. 1983). The IRS offers taxpayers an opportunity to discuss and present evidence on tax liability before it issues a deficiency notice. See 26 C.F.R. §§ 601.105, 601.106. A taxpayer has a right to notice, to discuss the case with and present evidence to an examiner, and to take an administrative appeal. This opportunity to be heard is at least as much as the Constitution demands for parole factfinding. See *Greenholtz*, 442 U.S. at 14–16, 99 S.Ct. at 2107–08. Kramer has been embroiled in controversy with the IRS for years and does not contend that the doors of the IRS were closed to him.

Once one agency of the government makes a finding, the Constitution does not require that the finding be subject to collateral attack in another agency. Quite the contrary, principles of administrative preclusion may bind agencies. See K.C. Davis, *Administrative Law Treatise* §§ 21.2, 21.3 (2d ed. 1983). Cf. *University of Tennessee v. Elliott*, — U.S. —, 106 S.Ct. 3220, 3225–27, 92 L.Ed.2d 635 (1986) (similar principles may require courts to follow administrative decisions). Kramer

contends that loss carryforwards offset his income, so that he has not evaded taxes. A decision by the IRS concerning the validity of such a claim is more likely to be correct than is a decision by the Parole Commission on the same subject. The due process clause applies to the United States as an entity, and if the United States chooses to lodge in the IRS administrative decisions that may affect parole, the Constitution does not stand in the way any more than it would if Congress set up a "tax section" of the Commission to consider tax issues. If Kramer had argued that the administrative procedures of the IRS violate the due process clause, perhaps he would have been entitled to a determination by the Commission whether the IRS had done enough to make its findings conclusive. As we have observed, however, Kramer does not press such an argument.

All of this said, we are not entirely content with the upshot. Kramer has been sent to the Tax Court, where the suit that may become *Kramer VI* is pending. The Tax Court may or may not act in time to do Kramer any good. We trust it will expedite things but have no authority to insist on this. By the time it acts and Kramer has his opportunity for review in the court of appeals (*Kramer VII?*), his sentence may be over. The speed of the law is deliberate, maybe too deliberate for someone who wants out now and will be released in 18 months no matter what the Tax Court does. It is troubling, too, that the Commission does not have any formal procedure to change its decision if the Tax Court should say that the IRS was wrong. The Commission has set Kramer's case for review in February 1987, but if the Tax Court acts (in Kramer's favor) sooner, or one day later, Kramer's only recourse under the Commission's rules is to send a plaint by mail and hope someone pays attention. A Commission that relies completely on the findings of the IRS ought to have in place some speedy and automatic way to recompute parole in response to changes in those findings.

■■■ The Commission should give serious thought to the problems that may arise out of deference to other agencies coupled with delay. Today's judicial role is limited, however. Having found that the reliance on the deficiency notice did not violate the Constitution, we must affirm the district court's decision denying the petition for habeas corpus. (Kramer's remaining arguments are irrelevant given the turn the National Appeals Board took.) If the IRS, the Tax Court, or this court should reevaluate Kramer's tax liability, and the Commission should remain impassive, it would become necessary to decide how quickly the Commission must react to changed findings. There is now no case or controversy on that score, and our concerns about the adequacy of the procedures in place do not entitle Kramer to any relief.

AFFIRMED

FLAUM, Circuit Judge, concurring.

This appeal presents a difficult issue that in many ways demonstrates the extent to which "due process" has become an increasingly "legal" concept, removed from ordinary notions of "fairness." It would doubtless surprise most lay persons (and perhaps many lawyers as well) that Arnold Kramer may be treated by the Parole Commission as if he had evaded a substantial tax liability despite the fact that no determination has ever been made by any judicial tribunal. It is clear, though, that the Commission may do so if Kramer is afforded due process of law. I am constrained in the circumstances presented here to agree that Kramer did receive sufficient process.

In *Kramer v. United States*, 798 F.2d 192 (7th Cir.1986), referred to by the majority as *Kramer III*, we directed that the estimate of Kramer's tax liability be deleted from the presentence report, thus eliminating the presentence report as a source of the estimate which could be used by the parole commission in determining Kramer's tax liability. The Commission was not precluded from considering that same information, however, if it were obtained from another source and if that source was reli-

able enough to comply with minimal due process requirements. In this respect the Deficiency Notice, the other source considered by the National Appeals Board, was sufficient. These notices are not simply tax bills, but are prepared under specific procedures that govern the underlying tax investigation. Moreover, these procedures afford taxpayers the opportunity to be heard. The Due Process Clause of the United States Constitution does not require the Commission to adjudicate the validity of the Notice in order to rely on it.

I am concerned, however, with the majority's discussion of the Parole Commission's reliance on the Deficiency Notice as being conclusive. The majority's conclusion may be construed as an inappropriate invitation to the Commission to ignore both the Tax Court's possible review of the Notice and the Federal Courts' power to protect the due process rights of potential parolees. The Commission may choose to rely on other agencies' actions in exercising its authority to make decisions affecting parole; but the Commission must do so in a way that affords the parolee due process of law. If the Tax Court rules in Kramer's favor, it will eliminate, as we did in *Kramer III*, a source of the critical information relied on by the Commission. The Commission would have to consider that event, for to ignore it would be to render the process available to Kramer (*i.e.* the Deficiency Notice and attendant Tax Court review) ineffective, and therefore less than what is due.