**Eduardo OCHOA, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 717, Docket 86–2357.**

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1987.

Decided May 22, 1987.

Diarmuid White, New York City (Richard Ware Levitt, New York City, on the brief), for petitioner-appellant.

Stephen F. Markstein, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for S.D. of New York, Nancy Kilson, Asst. U.S. Atty., New York City, on the brief), for respondent-appellee.

Before KAUFMAN, KEARSE and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Eduardo Ochoa, a federal prisoner incarcerated upon a conviction of criminal contempt for refusing to testify before a grand jury, appeals from a judgment of the United States District Court for the Southern District of New York, John M. Cannella, *Judge*, denying his petition for a writ of habeas corpus. To the extent pertinent to this appeal, the petition challenged Ochoa's continued incarceration on the grounds that the United States Parole Commission ("Parole Commission" or "Commission") (1) improperly failed to grant him credit pursuant to 18 U.S.C. § 3568 (1982) (repealed effective Nov. 1, 1987, Pub.L. 98–473, tit. II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended, and reenacted in part as 18 U.S.C. § 3585 effective Nov. 1, 1987, by the same legislation) for the time he had spent in jail in civil contempt in connection with the same refusal to testify, and (2) violated his rights under Fed.R.Crim.P. 32(c)(3)(D) and the Constitution by deciding his release date on the basis of hearsay statements in his presentence report that were not relied on by the district court in imposing sentence. Finding no merit in these contentions, we affirm.

## I. BACKGROUND

The procedural events are not in dispute. On October 12, 1982, Ochoa was ordered, under a grant of immunity, to answer questions posed by a grand jury investigating a series of crimes attributed to "Omega 7," an alleged terrorist group of anti-Castro Cuban exiles. When he refused, he was held in civil contempt pursuant to 28 U.S.C. § 1826 (1982). After maintaining his refusal for 17 months and, as a result, remaining incarcerated for that period, Ochoa was indicted for criminal contempt under 18 U.S.C. § 401 (1982) for his October 12, 1982 refusal to testify. He was convicted in May 1984, following a bench trial.

The presentence report on Ochoa included statements attributed to one Eduardo Arocena (the "Arocena hearsay"), linking Ochoa to terrorist activities. Prior to sentencing, Ochoa disputed certain parts of the report, including the Arocena hearsay, and the sentencing court expressly declined to consider the disputed parts in imposing

sentence. The district court sentenced Ochoa to six years' imprisonment.

On appeal from the judgment of conviction, Ochoa challenged the length of his sentence as excessive, and this Court, in light of our then-recent decision in *United States v. Gracia*, 755 F.2d 984 (2d Cir. 1985), reduced his sentence to four years' imprisonment. In addition, Ochoa argued, *inter alia*, that the disputed parts of the presentence report should be stricken or corrected. We rejected that contention, stating as follows:

> The district judge specifically noted Ochoa's challenge to portions of the report, and stated on the record that he would not consider those portions in fixing Ochoa's sentence. Joint Appendix at 454–56. That is all he was required to do. *United States v. Charmer Industries*, 711 F.2d 1164, 1172 n. 8 (2d Cir. 1983); *Rosati v. Haran*, 459 F.Supp. 1148, 1160 (E.D.N.Y.1977). Ochoa has suffered no present harm resulting from the allegedly inaccurate information; as to the future, his rights are protected by the due process safeguards built into the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201–4218. These, *inter alia*, require written notice of and a particularized statement of reasons for adverse determinations; specify the information that the Commission must consider; and afford the applicant the opportunity to appear and testify on his own behalf at the hearing.

*United States v. Ochoa*, 760 F.2d 254 (2nd Cir.1985).

In March 1985, the Parole Commission held a hearing with respect to the calculation of Ochoa's presumptive date of release from prison. Following that hearing, the Commission elected to credit the Arocena hearsay in calculating Ochoa's offense severity rating. In light of the offense severity score thus awarded, the Commission ruled that Ochoa should remain incarcerated until the expiration of his four-year sentence, less statutory good time.

After this determination had been made, two provisions of law pertinent to this appeal had potential relevance to the calculation of Ochoa's precise release date. First, 18 U.S.C. § 3568 provided that a prisoner was to receive "credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." 18 U.S.C. § 3568. Second, a Commission regulation provided that "[t]ime spent serving only a civil contempt sentence is not considered jail time under 18 U.S.C. § 3568." 28 C.F.R. § 522.11(g) (1986). In calculating Ochoa's release date, however, the Commission did not apply the regulation, for it apparently was unaware that Ochoa's prior 17–month confinement was for civil contempt rather than pretrial detention on the criminal contempt charge. Thus, it credited Ochoa with those 17 months and set his release date for January 1986.

Accordingly, in January 1986, Ochoa was "mandatorily released" pursuant to statutes governing good time allowances. He was rearrested four months later, after it was discovered that he had inadvertently been granted credit for time spent in civil contempt.

Upon his rearrest, Ochoa commenced the present proceeding, contending that he was entitled to remain free on the grounds (1) that § 3568, as well as notions of estoppel and due process, required that he receive credit toward his criminal contempt sentence for the time he had spent in civil contempt; and (2) that the Parole Commission could not properly use the Arocena hearsay when the sentencing court had declined to rely on those statements. The district court rejected these contentions, and this appeal followed.

## II. DISCUSSION

On appeal, Ochoa argues that he is entitled to release because (1) § 3568 entitled him to 17 months of jail time credit, and (2) the Commission's consideration of the Arocena hearsay violated his rights under Fed. R.Crim.P. 32(c)(3)(D) and the Due Process Clause of the Fifth Amendment. We find all of his contentions to be without merit.

### A. The Claim for Credit for Time Spent in Civil Contempt

Section 3568 provides, in pertinent part, as follows:

§ 3568. Effective date of sentence; credit for time in custody prior to the imposition of sentence

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed....

18 U.S.C. § 3568 (1982) (repealed effective Nov. 1, 1987, Pub.L. 98–473, tit. II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended, and reenacted in part as 18 U.S.C. § 3585 effective Nov. 1, 1987, by the same legislation). Ochoa contends that since both his civil contempt and his conviction of criminal contempt were based on his refusal to answer questions before the grand jury, his criminal contempt conviction was based on the same underlying "acts" for which he had previously been held in civil contempt, and that § 3568 thus entitles him to credit for the period of his civil contempt confinement. We reject this contention because it attributes to "acts" a meaning that is analytically inconsistent with the character and traditional treatment of confinement for civil contempt, is unjustified by its context and the legislative history of the section, and would deprive the civil contempt sanction of much of its efficacy.

It is, of course, well established that a court may impose both civil and criminal sanctions in connection with the same contumacious behavior. See, e.g., Yates v. United States, 355 U.S. 66, 74, 78 S.Ct. 128, 133, 2 L.Ed.2d 95 (1957); United States v. United Mine Workers, 330 U.S. 258, 299, 67 S.Ct. 677, 698, 91 L.Ed. 884 (1947). When the conduct is of a continuing nature and the contemnor has the power to terminate it, the court may hold the contemnor in civil contempt and impose a sanction that is designed to coerce him to comply with the court's order. E.g., Shillitani v. United States, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966); Badgley v. Santacroce, 800 F.2d 33, 36 (2d Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). The sanction generally takes the form of a jail term or a monetary fine, but it is not intended to be punitive, and the judgment will normally provide that the imprisonment or fine is to end as soon as the contemnor ceases his contumacious behavior. See, e.g., Shillitani v. United States, 384 U.S. at 368, 86 S.Ct. at 1534; Gompers v. Bucks Stove & Range Co., supra, 221 U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911); In re Irving, 600 F.2d 1027, 1037 (2d Cir.), cert. denied, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979); 28 U.S.C. § 1826(a) (allowing summary confinement of recalcitrant witness "until such time as the witness is willing to give" the required testimony or information). Thus, civil contemnors "are imprisoned only until they comply with the orders of the court.... They carry the keys of their prison in their own pockets." In re Nevitt, 117 F. 448, 461 (8th Cir.1902).

A sanction for criminal contempt, by contrast, is intended to serve a punitive and deterrent purpose. See Yates v. United States, 355 U.S. 66, 74, 78 S.Ct. 128, 133, 2 L.Ed.2d 95 (1957); United States v. Gracia, 755 F.2d at 992. Since it is designed to punish rather than to coerce obedience to a particular order, the criminal contempt judgment, though it too may impose imprisonment or a monetary fine, does not permit the contemnor to call a halt to the sanction by ending his contumacious behavior. See Gompers v. Bucks Stove & Range Co., 221 U.S. at 442, 31 S.Ct. at 498. Further, the offense of criminal contempt is complete at the moment of the initial refusal to comply with the order of the court. Indictment, conviction, and punishment may be based on this refusal. See, e.g., United States v. Petito, 671 F.2d 68, 73 (2d Cir.), cert. denied, 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); United States v. Monteleone, 804 F.2d 1004, 1007 & n. 2 (7th Cir.1986),

cert. denied, —— U.S. ——, 107 S.Ct. 1567, 94 L.Ed.2d 759 (1987). The acts of *continued* obduracy, while they may prolong the contemnor's civil confinement, neither constitute separate criminal contempt offenses, *see, e.g., Yates v. United States,* 355 U.S. at 73, 78 S.Ct. at 132; *United States v. Costello,* 198 F.2d 200, 204 (2d Cir.), *cert. denied,* 344 U.S. 874, 73 S.Ct. 166, 97 L.Ed. 677 (1952), nor are necessary preconditions to his punishment for the already complete offense of criminal contempt.

In principle, therefore, though some of the cases tend to speak of criminal and civil sanctions for the same "act," *e.g., Yates v. United States,* 355 U.S. at 74, 78 S.Ct. at 133, where the contemnor persists in his refusal several separate acts are involved. In Ochoa's case, the criminal contempt indictment charged him with having refused to testify "[o]n or about October 12, 1982," and his judgment of conviction showed October 12, 1982 as the date of his offense. Thus, his criminal contempt sentence was imposed to punish his initial act of contempt. We cannot see that the word "acts," in the phrase "days spent in custody in connection with the offense or *acts for which* sentence was imposed" (emphasis added), necessarily includes the repeated refusals which follow an act that is sufficient in itself to be punished as a criminal contempt.

We are not inclined to take a more expansive view of the word "acts" in order to grant Ochoa credit for his time spent in civil contempt, for to do so would deprive the civil confinement sanction of much of its efficacy. In the somewhat similar circumstances of a civil contemnor who is already a federal prisoner, courts have ordered that the period of civil confinement interrupt the service of the criminal sentence, for without such interruption the confinement would have no discernible effect. *See, e.g., United States v. Dien,* 598 F.2d 743, 744–45 (2d Cir.1979) (per curiam); *United States v. Chacon,* 663 F.2d 494, 495 (4th Cir.1981) (per curiam) (§ 3568 does not require that credit on preexisting criminal sentence be given for time spent in civil contempt); *In re Grand Jury Investiga-*

tion (*Appeal of Hartzell*), 542 F.2d 166, 168–69 (3d Cir.1976) (same), *cert. denied,* 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977); *United States v. Liddy,* 510 F.2d 669, 673–74 (D.C.Cir.1974) (en banc) (same), *cert. denied,* 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975); *Anglin v. Johnston,* 504 F.2d 1165, 1169 (7th Cir.1974) (same), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975). And when such a contemnor, having persisted in his refusal to comply with the court's order, has thereafter sought to have the period of his obduracy credited against his criminal sentence, we have declined to order such credit since to do so would clearly "undermine the courts' capacity to effectuate any coercive purpose under 28 U.S.C. § 1826." *McQuage v. United States,* 746 F.2d 759, 761 (2d Cir.1984) (per curiam). The same consideration counsels against the expansive interpretation of § 3568 argued for by Ochoa, for, especially given the temporal limitations imposed on the duration of criminal contempt sentences, *see, e.g., United States v. Gracia,* 755 F.2d at 990 (sentence reduced to four years), the coercive effect of civil contempt confinement on a recalcitrant witness would be substantially lessened if he knew that the amount of time he elected to remain confined would pro tanto reduce any jail time later imposed upon him pursuant to the criminal contempt statute. For these reasons, the Seventh Circuit, faced with the precise argument presented here by Ochoa, has concluded that § 3568 does not require that the contemnor's criminal sentence be shortened by the period he spent in civil contempt in connection with the same refusal to testify. *Sanchez v. Meese,* 807 F.2d 601, 603 (7th Cir.1986) (per curiam).

Finally, the legislative history of § 3568 provides no support for Ochoa's view, for it suggests that credit was intended only for time spent in involuntary custody in connection with criminal charges. The section had its origins in a provision enacted in 1932 which was designed simply to eliminate the then-existing confusion as to the date on which a federal sentence began to run when the prisoner had to be transferred from one place of confinement to another for his period of detention. That

section made no reference to "offense[s]" or "acts." *See* 18 U.S.C. § 709a (1934) (credit given for time spent in jail awaiting transfer); *United States v. Liddy,* 510 F.2d at 674. The statute retained this limited thrust until 1960, when Congress sought to clarify whether, under statutes requiring the imposition of a minimum mandatory sentence, the court was free to give recognition to the time a defendant had spent in jail for want of bail. In order to clarify that such recognition was not forbidden, a proviso was added to § 3568 granting such defendants credit for time spent in pretrial custody because of their inability to secure bail. *See* 18 U.S.C. § 3568 (1964); H.R. Rep. No. 2058, 86th Cong., 2d Sess., *reprinted in* 1960 U.S.Code Cong. & Ad. News ("USCCAN") 3288, 3289.

Section 3568 took its present form in 1966 when, as part of a general revision of bail practices, Congress deleted the provision granting credit for time spent in presentence custody for want of bail and added the provision requiring the Attorney General to give the prisoner credit "for any days spent in custody in connection with the offense or acts for which sentence was imposed." The term "offense" was defined in the section to mean, generally, criminal conduct that violates a federal statute and is triable in a federal court. 18 U.S.C. § 3568. The word "acts" was not defined in the section, but the legislative history states that the purpose of inserting it was

> to cover a condition where the defendant may have been arrested for a crime but subsequently is convicted of a lesser crime; thus, under the amendment, even though convicted of a lesser crime, he is given credit for the time spent in custody while awaiting trial on the charge of a greater crime. It would also permit the giving of credit for time spent in custody while awaiting trial where a defendant may have been originally arrested and held in custody on a State charge and eventually turned over to the Federal Government for prosecution of a Federal violation.

H.R.Rep. No. 1541, 89th Cong., 2d Sess., *reprinted in* 1966 USCCAN 2294–95; *see also id.* at 2306.

Thus, the history makes clear that Congress simply intended § 3568 to eliminate what would otherwise, in effect, be double punishment where the prisoner has been required to remain in custody on the criminal charges while awaiting trial or sentencing. There is no basis for inferring that custody for civil contempt was at issue, since that type of confinement differs significantly from the detention that follows a charge or adjudication of criminal contempt—or indeed of any other criminal offense—in that the civil contemnor has it within his power to secure his release whenever he chooses. Thus, the days of confinement that follow the civil contemnor's initial refusal—at least until the filing of a criminal contempt indictment—are not days the contemnor is forced to spend in custody in connection with that initial refusal; rather each such day is a day voluntarily spent in custody in preference to compliance on that day. Since civil contempt confinement is not punishment, it cannot be a component of double punishment, and thus neither the legislative history's explication of the phrase "or acts" nor the evolution of the section as a whole carries any suggestion that Congress intended § 3568 to require that credit be given for civil contempt confinement. It is to be presumed that Congress was aware of the long established power of the courts to impose sanctions for both civil and criminal contempt in connection with the same contumacious behavior, and we are confident that if it had wished to curtail that power or in any way to lessen the efficacy of nonpunitive confinement as a civil contempt sanction, it would have chosen a less obscure way to do so.

Finally, we note that the most recent revision of § 3568, which will become effective on November 1, 1987, as 18 U.S.C. § 3585, removes any possible ambiguity as to whether in the future credit is to be given for civil contempt confinement. The phrase "or acts" has been deleted, and the new section allows credit only where the presentence detention resulted from "the offense for which the sentence was imposed," or from "any other charge for which the defendant was arrested after the

commission of the offense for which the sentence was imposed." Plainly a civil contempt confinement is not within these categories, and the legislative history of this revision gives no indication whatever that Congress believed it was enacting any change affecting civil contempt confinement. *See* S.Rep. No. 225, 98th Cong., 2d Sess., 128–29, *reprinted in* 1984 USCCAN 3182, 3311–12.

■ For all of the foregoing reasons, we conclude that § 3568 does not require that a person sentenced to prison for criminal contempt be given credit on that sentence for any time, prior to his indictment on that charge, that he spent in civil contempt.

### B. *The Commission's Reliance on the Arocena Hearsay*

We also reject Ochoa's contentions that the Commission's reliance on the Arocena hearsay was improper because (1) Fed.R. Crim.P. 32(c)(3)(D) prohibits reliance on any material not relied on by the sentencing judge, and (2) due process prohibits reliance on hearsay.

In making parole decisions, the Commission is required by statute to consider all available relevant information concerning the prisoner, including presentence investigation reports. *See* 18 U.S.C. § 4207 (1982) (repealed effective November 1, 1987, Pub.L. 98–473, tit. II, §§ 218(a)(5), 235(a)(1), 98 Stat. 2027, 2031 (1984), as amended). In part because the Commission and other correctional authorities rely on these reports, Rule 32(c)(3)(D) requires that if the defendant alleges that the report is factually inaccurate, the sentencing court must either make written findings concerning any matter controverted or state that that matter will not be taken into consideration at sentencing, and it must append to the report a copy of its determinations. Although a principal purpose of this Rule is to provide correctional authorities with a clear record of the court's treatment of such disputed matters, *see United States v. Ursillo,* 786 F.2d 66, 71 (2d Cir.1986); *United States v. Eschweiler,* 782 F.2d 1385, 1387–88 & n. 7 (7th Cir.1986); *United States v. Petitto,* 767 F.2d 607, 609 (9th Cir.1985), the Rule does not purport to prescribe how the non-judicial authorities may treat the record it

creates. Like other rules of federal criminal procedure, Rule 32 governs only proceedings in federal courts, not in agencies of the Executive Branch. *See* Fed.R. Crim.P. 1; *Kramer v. Jenkins,* 803 F.2d 896, 899 (7th Cir.1986), *clarified on reh'g,* 806 F.2d 140 (per curiam).

■ Where, as in the present case, the sentencing court has chosen to comply with the Rule by disclaiming reliance on contested statements, the Commission is free to use the disclaimed portion of the report if it finds the information sufficiently accurate for its own purposes. *See Kramer v. Jenkins,* 803 F.2d at 900; *cf. Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976) (Commission may consider all matters bearing upon the prisoner's personal history and behavior, including unadjudicated charges and evidence of crimes of which he was acquitted). Unlike a finding of falsity, which might bind the Commission under familiar principles of res judicata, the court's mere refusal to rely on a statement reflects only its conclusion that it has found the information questionable or irrelevant for purposes of sentencing. *See Kramer v. Jenkins,* 803 F.2d at 900. While such a disclaimer may reasonably be thought of as a flag of caution to the Commission, we see no sound basis for holding that due process or any other applicable precept requires the Commission to give the disclaimer preclusive effect. Although there is dictum to the contrary in *Wixom v. United States,* 585 F.2d 920, 921 (8th Cir.1978) (per curiam), relied on by Ochoa, we reject it as unpersuasive.

■ Nor do we agree with Ochoa's contention that, independently of whatever effect may be given to the court's disclaimer, the Commission's reliance on the disputed statements deprived him of due process because their hearsay character rendered them inherently unreliable. Since § 4207 requires the Commission, in calculating a release date, to take into account any reasonably available evidence that is relevant, we have held that the Commission has statutory authorization to consider presentence report statements that are hearsay. *Billiteri v. United States Board of Parole,* 541 F.2d at 944–45. We see no due process violation in this general principle or in its

application to Ochoa. There is no substantive due process right to prevent the Commission's reliance on hearsay, and Ochoa does not contend that the Commission failed to follow appropriate procedures. He was given an opportunity to appear and testify at the hearing and to submit additional information concerning the accuracy of the Arocena statements. The Commission considered both Ochoa's evidence and the fact that Arocena had taken a polygraph test with respect to the included statements and that the test results did not indicate that his statements were untrue. Accordingly, we find neither a violation of due process nor any abuse of discretion in the Commission's decision to take the Arocena hearsay into account in fixing Ochoa's release date.

## CONCLUSION

We have considered all of Ochoa's arguments on appeal and have found them to be without merit. The judgment of the district court is in all respects affirmed.