**Frank S. DORMAN, Plaintiff,**

v.

**John R. SIMPSON, Sam Samples, David Williams, Unknown Rogers, and Ray Essex, Defendants.**

Civ. A. No. 1:94–CV–2568–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 8, 1995.

Plaintiff pro se.

Patricia Rebecca Stout, Office of U.S. Atty., N.D. of Georgia, Atlanta, GA, for defendants.

### ORDER

HULL, District Judge.

On September 23, 1994, Frank S. Dorman ("Plaintiff"), currently an inmate at the United States Penitentiary, Atlanta, Georgia, filed this Complaint [1–1], alleging that Defendants violated his due process rights by conducting Plaintiff's federal parole revocation hearing in Georgia as opposed to New York. All Defendants are federal actors and thus the Court treats Plaintiff's Complaint as one brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

This is at least Plaintiff's third time in federal district court raising claims against federal parole or probation officials in connection with his convictions or sentences. In 1986, Plaintiff filed suit in the Southern District of New York, alleging that Plaintiff's probation officer falsified Plaintiff's presentence report. Judge Constance Baker Motley dismissed Plaintiff's complaint based on absolute immunity. The Second Circuit affirmed that decision in *Dorman v. Higgins,* 821 F.2d 133 (2d Cir.1987). Additionally, Plaintiff has another suit pending against federal officials in the Eastern District of New York, wherein Plaintiff raised many of the allegations he raises in his Complaint in the action in this Court.[1]

This matter is before the Court on Defendants' Motion to Dismiss. After reviewing the record in its entirety, the Court grants Defendants' Motion to Dismiss based on sovereign immunity, lack of service, absolute immunity, qualified immunity, failure to exhaust administrative remedies, and for failure to state a claim against these Defendants.

### I. FACTUAL BACKGROUND

### A. ALLEGATIONS IN PLAINTIFF'S COMPLAINT AND LATER PLEADINGS

On September 23, 1994, Plaintiff filed his Complaint [1–1] in this Court. This Complaint was filed before Plaintiff's final revocation hearing in December, 1994. Plaintiff's Complaint does not allege that Defendants violated any of Plaintiff's constitutional or statutory rights, but rather contains a narrative of certain events which Plaintiff apparently feels entitles him to relief.

Plaintiff's Complaint alleges that he signed for his revocation hearing to be held in Brooklyn because his attorney, a major witness, and his parole officer were in Brooklyn. Plaintiff continues that he has not been convicted on any new offenses, and that he denies all alleged parole violations. Plaintiff's Complaint also alleges that United States Parole authorities altered a document purporting to give Plaintiff's consent to have Plaintiff's revocation hearing conducted in Atlanta.

On November 9, 1994, Plaintiff filed an untitled pleading [3–1, 3–2, 3–3] wherein Plaintiff moves the Court to release Plaintiff, to grant monetary damages, and to grant any additional relief based on the violation of Plaintiff's due process and constitutional rights by the United States Parol Commission. In this pleading, Plaintiff explains in more detail the allegations in his initial Complaint. In particular, Plaintiff explains that

---

1. The Court has identified five additional unpublished actions filed by Plaintiff in the Southern District of New York. In 1981, Plaintiff filed suit in *Dorman v. Loughran,* Civil Action No. 81–CV–5456 in the Southern District of New York, a Section 1983 action challenging the circumstances surrounding a previous parole revocation. In 1983, Plaintiff filed two actions, Civil Action No. 83–CV–3699 and Civil Action No. 83–CV–4391, both styled *Dorman v. United States,* in the Southern District of New York. In one of the

two actions Plaintiff sought a writ of habeas corpus, and in the other action Plaintiff sought a writ of mandamus. In both actions, Plaintiff sought to be released from custody. In 1987, Plaintiff filed two additional habeas corpus actions, consolidated under the name *Dorman v. United States,* Civil Action No. 87–CV–5396 and Civil Action No. 87–CV–6198, in the Southern District of New York, both regarding his 1986 escape conviction.

the document, allegedly altered, was a CJA–22 form which Plaintiff signed authorizing the Eastern District of New York to appoint him counsel. Plaintiff alleges that this CJA–22 form was altered to reflect that Plaintiff consented to be appointed counsel in the Northern District of Georgia. Plaintiff later alleges the alteration occurred by striking through the Eastern District of New York and placing the Northern District of Georgia in its place. Plaintiff does not allege his signature was altered, but that this cross-out constituted an unauthorized alteration.

In this later pleading, Plaintiff also alleges that Plaintiff's preliminary parole revocation hearing was held in Atlanta on May 25, 1994, without Plaintiff's being there. Plaintiff alleges that additional parole revocation hearings were then held in Atlanta on August 9, 1994, and October 25, 1994, and that Plaintiff's attorney, Russell Gabriel of the Federal Public Defender's Office in Atlanta, continued to request that the hearing be held in New York. According to Plaintiff, his parol revocation hearing was again continued until December 13, 1994. Although Plaintiff's pleading specifically references several hearings he attended, Plaintiff concludes that he has been "adjudged guilty without a hearing" and without an opportunity to defend himself.

In the same November 9, 1994 untitled pleading, Plaintiff also attaches a copy of a letter from attorney Douglas Morris, Plaintiff's appointed counsel in New York, where Morris states that despite contacting various parole officials, "I was unable to convince them to keep the case here in New York."

In his November 9, 1994 untitled pleading, Plaintiff also attaches a copy of his "pre-review revocation hearing", which alleges that while on parole in New York, Plaintiff left the district without permission, failed to report, issued a bad check for $80,000 to Brenda Orr in Decatur, Georgia, and obtained credit cards from Brenda Orr in Georgia and his former common law wife, Francis Thomas, and then used those credit cards without permission. The report states that

Plaintiff "is currently 60 years of age and previously incurred over 31 arrests and at least 15 prior commitments primarily for fraud. This is subject's third violation of parole on his federal sentences."

Plaintiff filed this Complaint in September, 1994 prior to his final parole revocation hearing in December, 1994. It was not until January, 1995 that the Regional Commissioner concurred with the panel's recommendations and ordered that Plaintiff's mandatory release be revoked and that Plaintiff be continued to expiration. Pursuant to 28 C.F.R. § 2.26, Plaintiff has the right to appeal this decision to the Commission's National Appeals Board.

### B. DEFENDANTS NAMED IN PLAINTIFF'S COMPLAINT

Plaintiff names these five Defendants in his Complaint: (1) John R. Simpson, a member of the United States Parole Commission in Chevy Chase, Maryland; (2) Sam Samples, the Commission's Southeast Regional Director in Atlanta; (3) David Williams, a United States Probation Officer in Brooklyn, New York; (4) "Unknown" Rogers, the examiner who conducted Plaintiff's preliminary revocation hearing in Atlanta; and (5) Ray Essex, the examiner who conducted Plaintiff's August 9, 1994 revocation hearing.[2]

## II. DISCUSSION

Plaintiff's Complaint is not clear whether Plaintiff is suing Defendants in their official or individual capacities, or both. Thus, the Court will examine both.

### A. SOVEREIGN IMMUNITY

■ To the extent Plaintiff sues Defendants in their official capacities, that portion of Plaintiff's action is really against the United States. *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Peppers v. Coates*, 887 F.2d 1493, 1499 (11th Cir.1989). "An action is one against the United States as a sovereign where the judgment sought is to be satisfied from monies of the federal

---

**2.** This was not Plaintiff's actual final revocation hearing. This was the one of the earlier scheduled "final" revocation hearings. The examiner continued the hearing, but proceeded to take testimony from the witnesses "for the record," since they were both present.

treasury, or where the judgment interferes with public administration, or where the judgment's effect is to compel or restrain the government's actions." *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1555 (11th Cir.1985). Thus, the Court finds that Plaintiff's suit against Defendants in their official capacities is really a suit against the United States and is subject to dismissal because of the United States' sovereign immunity.

■ The United States is immune from suit unless there has been an unequivocal waiver of immunity. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 32–33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992); *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607, *r'hng denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *McCollum v. Bolger,* 794 F.2d 602 (11th Cir.1986). Waiver of sovereign immunity is a prerequisite to subject matter jurisdiction. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Accordingly, the only way Plaintiff's claims for monetary relief against Defendants in their official capacities can stand is if the United States has consented to be sued for the type of wrongs of which Plaintiff complains.

■ The United States has not consented to be sued for the types of wrongs of which Plaintiff complains. The United States has not waived its immunity from suits for money damages arising from constitutional violations. *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982); *Kunkler v. Fort Lauderdale Housing Authority,* 764 F.Supp. 171, 176 (S.D.Fla.1991).

■ The sole and exclusive statutory waiver of sovereign immunity of the United States for actions alleging tortious conduct is the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1994). Since Plaintiff has failed to bring his claims under the FTCA, Plaintiff's claims are barred by sovereign immunity. 28 U.S.C. § 2675(a) (the Federal Torts Claims Act); *Hunt v. Department of the Air Force,* 29 F.3d 583, 587 (11th Cir.1994) ("Sovereign immunity can be waived only by the sovereign, and the circumstances of its waiver must be scrupulously observed, and should not be expanded nor constricted by the courts."); *Ross v. United States,* 574 F.Supp. 536, 540–41 (S.D.N.Y.1983).

■ Even if the Court construed Plaintiff's claims as common law tort claims brought under the FTCA, Plaintiff's claims still would be barred by sovereign immunity because the FTCA does not waive immunity for tort claims which are constitutional in nature. 28 U.S.C. § 2674 (1994); *FDIC v. Meyer,* —— U.S. ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982); *Hatley v. Department of the Treasury,* 876 F.Supp. 1262 (S.D.Ala.1995). Since Plaintiff is alleging due process and constitutional violations, the FTCA is not a vehicle by which this Court may address Plaintiff's claims.

■ Also, Plaintiff fails to allege that he has exhausted his administrative remedies against the United States. Section 2675 of the FTCA requires that a plaintiff file a claim with the appropriate government agency before pursuing judicial relief. 28 U.S.C. § 2675(a); *McNeil v. United States,* —— U.S. ——, ——, ——, 113 S.Ct. 1980, 1981, 1984, 124 L.Ed.2d 21 (1993). Here, Plaintiff has not alleged that he has filed an appeal with the Commission's National Appeals Board. Thus, Plaintiff has failed to allege a statutory prerequisite to the filing of an FTCA action.

In short, for any number of reasons, Plaintiff's claims against all Defendants in their official capacities are dismissed.

### B. LACK OF SERVICE ON DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

■ In *Bivens,* the Supreme Court created a cause of action for money damages against federal employees in their individual capacities for constitutional violations. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Armstrong v. Sears,* 33 F.3d 182, 186–87 (2d Cir.1994). Since this is a suit against Defendants in their individual capacities, Plaintiff

must serve all individual Defendants pursuant to Federal Rule of Civil Procedure 4(e). Fed.R.Civ.P. 4(e); *Armstrong v. Sears,* 33 F.3d 182, 186–87 (2d Cir.1994). Here the record is devoid of any evidence that Plaintiff has properly served any of the individual Defendants.

Plaintiff is incarcerated at the United States Penitentiary in Atlanta, and is proceeding *in forma pauperis.* Thus, service of process in this action is performed by the United States Marshal Service, on behalf of Plaintiff. The record reveals that Plaintiff completed a USM–285 "Process Receipt and Return" with the names and addresses of each of the individual Defendants. The USM–285 forms completed as to Defendants Simpson, Samples, Rogers, and Essex are all returned unexecuted, because Plaintiff failed to provide a proper address where the these Defendants could be served.

### 1. *Lack of Service on Defendants Simpson, Samples, Rogers, and Essex*

On January 19, 1995, an unexecuted return of service for Defendant Samples was filed with the Court [8–1]. The form stated that a U.S. Marshal attempted service on Defendant Samples on January 3, 1995, and again on January 11, 1995, at the Regional Office of the United States Parole Commission, which is the address Plaintiff placed on the USM–285 form. On the latter date, the U.S. Marshal was informed that Defendant Samples had retired. Since no further address was given for Defendant Samples, the U.S. Marshall was unable to execute service.

On March 13, 1995, an unexecuted return of service for Defendant Essex was filed with the Court [12–1]. On the USM–285 form addressed to Defendant Essex, the U.S. Marshal indicated that he attempted to serve Defendant Essex at the address given by Plaintiff, which was the United States Parole Commission office in Atlanta, on January 3, 1995, and again on January 4, 1995. The official responsible for accepting service was not present on either occasion. In the remarks section at the bottom of the form, the U.S. Marshal entered a notation on January 30, 1995 which reads "serve at above new address." The address was a Maryland ad-

dress. On January 31, 1995, the Marshal mailed the summons and complaint to the Maryland address. On March 10, 1995, the U.S. Marshal entered a notation which states "Returned unexecuted. No response by mail." The mail address was apparently not a good address for this Defendant either.

Also on March 13, 1995, an unexecuted return of service as to Defendant Simpson was filed with the Court [12–2]. On the USM–285 form addressed to Defendant Simpson, the U.S. Marshal indicated that the summons and Complaint was placed in First Class Mail on December 20, 1994, and sent to Defendant Simpson at a Chevy Chase, Maryland address. On March 10, 1995, the Marshal entered the notation, "Returned unexecuted. No Service by mail."

No executed return of service for Defendant Rogers has been filed with the Court.

Thus, Defendants Simpson, Samples, Rogers, and Essex have never been properly served in this case. On February 1, 1995, Defendants filed a Motion to Dismiss [10–1], wherein Defendants raise the defense of improper service of process.

Pursuant to Federal Rule of Civil Procedure 4(m) and Local Rule 230–2(b) of the Northern District of Georgia, the Court may dismiss any Defendant not served within 120 days of the filing of Plaintiff's Complaint. Defendants Simpson, Samples, Rogers, and Essex were never served. Accordingly, the Court dismisses Plaintiff's claims against Defendants Simpson, Samples, Rogers, and Essex in their individual capacities for lack of service.

### 2. *Lack of Proper Service on Defendant Williams*

On January 4, 1995, an executed return of service for Defendant Williams was filed with the Court [5–1]. The return of service indicates that service was executed as to Defendant Williams in a manner described in the remarks section at the bottom of the USM–285 form. In the remarks section, the U.S. Marshal entered a notation that reads "12/20 FCM," which indicates that the summons and Complaint was placed in First Class Mail on December 20, 1994. The U.S.

Marshal listed the date of service as December 29, 1994.

Although Defendant Williams was served by mail within the 120 window provided by the Federal and Local Rules, such service on Defendant Williams is ineffective and thus improper for a Defendant sued in his individual capacity. Federal Rule of Civil Procedure 4(e) prescribes that an individual may be served: (1) pursuant to the laws of the state in which the district court is located, (2) pursuant to the laws of the state where service is effected, (3) by delivering copies of the complaint and summons to the defendant personally, (4) by leaving copies of the summons and complaint "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein," or (5) by delivering copies of the summons and complaint to an agent of the defendant who is authorized to receive service of process.

Rule 4(e) allows service either in the three ways provided by Rule 4(e), or by the laws of the state of the district court or the state where service was attempted. This Court sits in Georgia, and service was attempted upon Defendant Williams in New York; therefore, the Court examines briefly Georgia and New York laws regarding service. In Georgia, service upon an individual must be accomplished the same three ways outlined in Rule 4(e). O.C.G.A. § 9–11–4(d)(7) (Michie 1993). Thus, Georgia law does not add to the ways in which service may be effected under the Fed.R.Civ.P. 4(e). In this type of cause of action in New York, service of an individual may be accomplished by personally serving the individual, or by delivering the summons and complaint to a person of suitable age at the defendant's place of residence, place of business, or usual place of abode and mailing the same to the last known address of Defendant's place of residence or place of business. N.Y.Civ.Prac.L. & R. 308 (McKinney 1994). New York law also provides for service of process in the fifth method outlined in Fed.R.Civ.P. 4(e). Thus, New York law does not add to the ways service may be perfected under the Federal Rules.

Upon examination of the record, the Court finds that Defendant Williams has not been served properly under any of the ways allowed under Fed.R.Civ.P. 4(e). The record shows that Defendant Williams was served by depositing a copy of the summons and Complaint in first class mail with proper postage affixed thereto. This is not a proper means by which Defendant Williams can be served. Accordingly, since Defendant Williams has never been properly served in this case, Plaintiff's claims against Defendant Williams in his individual capacity are dismissed for lack of service.

## C. ABSOLUTE IMMUNITY

■ It has long been established that members of the judiciary are entitled to absolute immunity. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court also has extended absolute immunity to others that perform functions closely associated with the judicial process. For example, the Supreme Court has held that hearing examiners are entitled to absolute immunity for their "quasi-judicial" duties. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The Supreme Court has not decided whether parole officials have absolute immunity. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). However, the Supreme Court has observed that several federal appellate courts have held that state parole officials have absolute immunity. *See Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Specifically, the First, Fifth, and Seventh Circuits have joined the Eleventh Circuit in holding that state parole board members are entitled to absolute quasi-judicial immunity from civil suits for damages. *Johnson v. Rhode Island Parole Board Members*, 815 F.2d 5 (1st Cir.1987); *Walker v. Prisoner Review Board*, 769 F.2d 396 (7th Cir.1985), *cert. denied*, 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190 (5th Cir.1985).

### 1. Federal Parole Officers

■ Defendants here contend that they are absolutely immune from suits for money

damages arising out of Defendants' quasi-judicial actions. The Eleventh Circuit has held that state parole board members are entitled to absolute quasi-judicial immunity from a suit for money damages against the defendants individually. *Clark v. State of Georgia Pardons & Paroles Board*, 915 F.2d 636, 640 n. 1 (11th Cir.1990); *Fuller v. Georgia State Board of Pardons & Paroles*, 851 F.2d 1307 (11th Cir.1988). However, the Eleventh Circuit has never addressed specifically the question whether that immunity also insulates members of the United States Parole Commission.

Several Circuit Courts have held that federal parole officials are entitled to immunity. For example, the Seventh Circuit has held that members of the United States Parole Commission are absolutely immune from suits for money damages. *Walrath v. United States*, 35 F.3d 277 (7th Cir.1994). Additionally, the Third, Eighth, and Ninth Circuits have held that federal parole officials are immune from suits arising from their adjudicatory functions. *Wilson v. Rackmill*, 878 F.2d 772 (3d Cir.1989); *Nelson v. Balazic*, 802 F.2d 1077 (8th Cir.1986); *Fendler v. United States Parole Commission*, 774 F.2d 975 (9th Cir.1985).

█ In short, various federal appeals courts have extended immunity, at least in some form, to federal and state parole officials. Since the same concerns apply with equal force to state and federal parole officials, this Court sees no reason why a distinction should be made between state parole officials and federal parole officials. Accordingly, this Court holds that federal parole officials are absolutely immune from civil suits for money damages arising out of acts related to their quasi-judicial functions. Since Plaintiff's action arises out of acts related to Defendants' quasi-judicial functions, this Court dismisses Plaintiff's action against Defendants Simpson, Samples, Essex, and Rogers based on absolute immunity.

### 2. *Federal Probation Officers*

█ Additionally, the Court finds that Defendant Williams, a federal probation officer, is entitled to absolute immunity from suit arising from Plaintiff's allegations that Defendant Williams found probable cause that Plaintiff committed parole violations solely on the report of another probation officer. The Second, Fifth, and Tenth Circuits all have held that federal probation officers are entitled to absolute immunity for their quasi-judicial functions. *Dorman v. Higgins*, 821 F.2d 133 (2d Cir.1987); *Tripati v. INS*, 784 F.2d 345 (10th Cir.1986); *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir. 1979) (per curiam). As the Second Circuit noted in *Dorman*, "given the propensity of prisoners to file lawsuits challenging all aspects of the proceedings against them, we feel the need for the federal probation officer to have absolute immunity from a civil suit for damages." *Dorman*, 821 F.2d at 138. If probation officers are held personally liable as guarantors of the information provided them, they may become hesitant to bring forth some of the information they have collected. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Dorman*, 821 F.2d at 138; *Hughes v. Chesser*, 731 F.2d 1489 (11th Cir.1984) (recognizing *Spaulding* as precedent and extending its coverage also to provide absolute immunity for state probation officers).

█ The Court finds that there is little risk associated with providing absolute immunity for the function of issuing violator arrest warrants based on the finding of probable cause. There are a number of procedural safeguards designed to insure that a prisoner's parole is not violated based on materially false or insufficient evidence. *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *United States v. Frazier*, 26 F.3d 110 (11th Cir.1994) (setting forth the minimum due process requirements which must be accorded prisoners at parole revocation hearings). The prisoner is entitled to a parole revocation hearing, and has the opportunity to cross-examine witnesses and present witnesses of his own. *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994); *Ochoa v. United States*, 819 F.2d 366 (2d Cir.1987). The prisoner also may peti-

tion the court for a writ of habeas corpus to challenge the probation officer's finding of probable cause. *Kramer v. Jenkins*, 803 F.2d 896 (7th Cir.1986).

The Court finds that, considering the nature of the function performed, the impossibility of guaranteeing the accuracy the information submitted to the federal probation officer, and the routine subjection of the probation officer's finding of probable cause to the adversary process and to judicial scrutiny, federal probation officers should be accorded absolute immunity for their function in issuing violator warrants. *Dorman v. Higgins*, 821 F.2d 133 (2d Cir.1987); *Tripati v. INS*, 784 F.2d 345 (10th Cir.1986); *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir. 1979) (per curiam). *See also Demoran v. Witt*, 781 F.2d 155 (9th Cir.1985); *Hughes v. Chesser*, 731 F.2d 1489 (11th Cir.1984) (providing state probation officers absolute immunity for their functions in connection with the judicial process). Since Plaintiff's action arises out of acts related to Defendant's quasi-judicial functions, the Court dismisses Plaintiff's action against Defendant Williams based on absolute immunity.

### D. *QUALIFIED IMMUNITY*

■ Even if Defendants are not entitled to absolute immunity from Plaintiff's claims, all Defendants are protected by qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity protects "government officials performing discretionary functions from civil trials (and other burdens of litigation and discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Rodgers v. Horsley*, 39 F.3d 308 (11th Cir. 1994); *Lassiter v. Alabama A & M University*, 28 F.3d 1146 (11th Cir.1994). The Eleventh Circuit has held that "in light of preexisting law, the unlawfulness must be apparent." *Hartsfield v. Lemacks*, 50 F.3d 950, 955 (11th Cir.1995) (quoting *Jordan v. Doe*, 38 F.3d 1559 (11th Cir.1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987))). "To be clearly established, the contours of an asserted constitutional right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Jordan v. Doe*, 38 F.3d 1559 (11th Cir.1994).

■ Plaintiff's claims rise primarily from the fact that his revocation hearing was held in Atlanta, as opposed to New York. Plaintiff also objects to the fact that he was appointed counsel in Atlanta to represent him at his revocation hearing. Plaintiff expressed a desire to be represented by his New York appointed attorney. Neither of these allegations state a claim of a violation of a clearly established right. There is no constitutional right to have a parole revocation hearing held in a specific location. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *United States v. Frazier*, 26 F.3d 110 (11th Cir.1994); *United States v. Copeland*, 20 F.3d 412 (11th Cir.1994) (outlining the minimum due process rights which must be accorded individuals at parole revocation hearings, including a requirement that hearing be held at a location where alleged violation occurred). To the contrary, 28 C.F.R. § 2.49(b) gives parole officials the authority to convene a revocation hearing in any location a parole violation is alleged to have occurred. Accordingly, Defendants acted pursuant to clearly established law.

■ Additionally, although the Supreme Court has recognized the right to counsel in certain parole revocation hearings, this right is not absolute. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). When the right does exist, the Supreme Court has required only that prisoners be appointed competent counsel, not the attorney of their choice. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court is not required to decide whether the CJA–22 form was altered without Plaintiff's consent because the Court will assume that Plaintiff at all times requested to have his New York appointed counsel rather than his appointed counsel in Atlanta. Even so, Plaintiff still has no clearly established constitutional right to select the attorney to be appointed him.

Therefore, this Court finds that, even construing Plaintiff's claims liberally because of his *pro se* status, Plaintiff's allegations raise no constitutional violations, much less any claims of violations of clearly established constitutional law. Accordingly, the Court dismisses Plaintiff's complaint against all Defendants based on qualified immunity.

### E. *FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES*

 When a prisoner attacks the fact or duration of his confinement, the proper vehicle through which that prisoner is accorded relief is a writ of habeas corpus. *Merki v. Sullivan*, 853 F.2d 599 (8th Cir. 1988); *Perez–Perez v. Hanberry*, 781 F.2d 1477 (11th Cir.1986). In this case, Plaintiff is requesting that this Court "[o]rder [his] immediate release forthwith plus any money damages the court feels 'just.'" In requesting release, Plaintiff attacks the fact or duration of his federal confinement.

Because Plaintiff's requested relief would result in release, and thus a reduction in sentence, Plaintiff's claim must be treated as a habeas corpus claim. However, Plaintiff's habeas claim must be barred since Plaintiff must exhaust all available administrative remedies before seeking habeas relief, and Plaintiff has not exhausted his available remedies. *Merki v. Sullivan*, 853 F.2d 599 (8th Cir.1988); *Perez–Perez v. Hanberry*, 781 F.2d 1477 (11th Cir.1986); *Dufresne v. Baer*, 744 F.2d 1543 (11th Cir.1984); *Hopper v. United States Parole Commission*, 702 F.2d 842 (9th Cir.1983); *Page v. United States Parole Commission*, 651 F.2d 1083 (5th Cir. 1981); *Landrum v. Warden*, 623 F.2d 416 (5th Cir. Unit A 1980); *Lundy v. Osborn*, 555 F.2d 534 (5th Cir.1977); *Meagher v. Dugger*, 737 F.Supp. 641 (S.D.Fla.1990).

Treating this as a case seeking habeas relief, there has been no showing that Plaintiff's available administrative remedies have been exhausted. At the time Plaintiff filed his Complaint, his final revocation hearing had not been held. After his final revocation hearing was held on December 13, 1994, Plaintiff had the option to appeal the Commission's decision to the Commission's National Appeals Board. 28 C.F.R. § 2.26. To date, Defendants stress that Plaintiff has not appealed the results of his final revocation hearing to the Commission's National Appeals Board. Therefore, Plaintiff has not given the Commission the opportunity to correct its own errors before bringing his claims to this Court. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Merki v. Sullivan*, 853 F.2d 599 (8th Cir.1988). Accordingly, Plaintiff's claims for release are dismissed against all Defendants.

### F. *FAILURE TO STATE A CLAIM*

 Finally, the Court finds that all of Plaintiff's allegations fail to state a claim against Defendants Simpson, Samples, and Williams under *Bivens*. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claims showing that the pleader is entitled to relief." The purpose of this rule is to provide a defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir.1984). Further, there is a heightened pleading requirement associated with the filing of a *Bivens* action. Plaintiff alleges that his constitutional rights have been violated, and that he has suffered "mental distress," but Plaintiff has not indicated how Defendants Simpson, Samples, and Williams violated his rights. Thus, Plaintiff has failed to meet the minimal, much less the heightened pleading requirements necessary to obtain relief for his alleged claims against Defendants Simpson, Samples, and Williams.

 As to Defendant Simpson, Plaintiff's original Complaint states that "John R. Simpson issued and signed [a] warrant for [his] arrest prior to investigating the actual merits of a letter report submitted by his [probation officer]." Plaintiff states no other acts on the part of Defendant Simpson which allegedly violated his rights. Accordingly, Plaintiff has not stated a claim against Defendant Simpson for a violation of his constitutional rights or any other claim upon which relief can be granted.

Plaintiff next states that "Sam Samples is the Regional Director for this S.E. area." Plaintiff makes no allegations of any specific conduct on the part of Defendant Samples. Thus, Plaintiff has stated no claim against Defendant Samples upon which relief can be granted.

As to Defendant Williams, Plaintiff's Complaint alleges that "David Williams, USPO at Brooklyn, N.Y., found probable cause of all alleged violations 'solely upon the report of his co-worker, Darey A. Zavetsky.'" Plaintiff makes no other allegations of conduct on the part of Defendant Williams which allegedly violated his constitutional rights. Therefore, Plaintiff has made no claims against Defendant Williams upon which relief can be granted.

On November 9, 1994, Plaintiff filed a pleading wherein he requested that this Court grant Plaintiff's release and monetary damages "for past and continuing constitutional and due process violations." In this pleading, Plaintiff restated the claims he made in his original Complaint. Plaintiff included also in the November 9, 1994 pleading that a CJA–22 form that Plaintiff had signed to be appointed counsel in New York had been altered to reflect that Plaintiff had signed a form requesting appointment of counsel in the Northern District of Georgia. However, Plaintiff did not allege that any of the named Defendants altered the CJA–22 form. Accordingly, even in his additional pleading, Plaintiff has stated no claims for constitutional violations against Defendants Simpson, Samples, and Williams upon which relief may be granted.

### G. *PLAINTIFF'S MOTION TO ADD ADDITIONAL PARTIES*

On January 31, 1995 Plaintiff filed a pleading [9–1] requesting this Court to allow him to add four additional parties: (1) Patricia Vines, a case analyst with the Commission who resides in Chevy Chase, Maryland; (2) Richard K. Preston, an attorney for the Commission, also residing in Chevy Chase, Maryland; (3) Ann Palmer, Plaintiff's appointed attorney in Atlanta; and (4) Callie Jones, a Federal Public Defender in Atlanta. Plaintiff informs the Court that Plaintiff "will so advise The Court as to how each of The above four (4) individuals has conspired against The Plaintiff."

Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading as a matter of course at any time before the opposing party has filed a responsive pleading, if the party's original pleading requires a response. Fed.R.Civ.P. 15(a). Accordingly, since Defendants had not filed a responsive pleading at the time Plaintiff filed his Motion, Plaintiff would normally have been entitled to amend his Complaint. This entitlement would have included right to add parties, as long as Plaintiff met the requirements of Federal Rule of Civil Procedure 20(a), which allows the joinder of additional defendants if Plaintiff's claims against those additional defendants arise out of the same transaction which gave rise to Plaintiff's claims against the originally named Defendants. Fed. R.Civ.P. 20(a).

Plaintiff does not allege that his claims against the parties he wishes to add arise out of the same transaction which gave rise to Plaintiff's claims against the originally named Defendants. To be sure, Plaintiff does not even make allegations as to how the parties Plaintiff wishes to add violated his constitutional rights. Rather, Plaintiff "will so advise The Court as to how each of The above four (4) individuals has conspired against the Plaintiff." That Plaintiff contemplates giving this "advise" to the Court falls short of meeting the requirements of Rule 20(a). Accordingly, Plaintiff's Motion to Add Parties is denied.

### III. *CONCLUSION*

For the reasons discussed above, the Court hereby DENIES Plaintiff's Motion for Release, Sanctions, and Other Relief [3–1, 3–2, 3–3], DENIES Plaintiff's Motion to Add Parties [9–1], and GRANTS Defendants' Motion to Dismiss [10–1].

The Court directs the Clerk to enter final judgment in favor of Defendants dismissing all of Plaintiff's claims.

It is SO ORDERED.